828 F.2d 1300
 26 ERC 1577, 18 Envtl. L. Rep. 20,113
 Eric RINGSRED, an individual; Appellant,
v.
Elizabeth DOLE, Secretary of the United States Department of
Transportation, individually and in her official capacity;
Ray Barnhart, Administrator of the Federal Highway
Administration, individually and in his official capacity;
Richard Braun, Commissioner of the Minnesota Department of
Transportation, individually and in his official capacity;
John Pawlak, District Engineer, District One, Minnesota
Department of Transportation, individually and in his
official capacity; the City of Duluth, a Minnesota Home
Rule Charter City, Appellees.
 No. 86-5354.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 12, 1987.
Decided Sept. 14, 1987.
 
 Gerald J. Brown, Duluth, Minn., for appellant.
 Donald Muting, Asst. Atty. Gen., St. Paul, Minn., and Vicki L. Plaut, of the Dept. of Justice, Washington, D.C., for appellees.
 Before McMILLIAN, JOHN R. GIBSON and WOLLMAN, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Eric Ringsred brought this action to prevent the extension of I-35, a four-lane freeway, from 10th Avenue East through 26th Avenue East in Duluth, Minnesota. The freeway will enter a tunnel near 10th Avenue East and continue beneath the rose garden area of Leif Erikson Park. The road emerges from the tunnel at approximately 13th Avenue East and will use 0.2 acres of parkland. The freeway will then continue to 26th Avenue East, following the Lake Superior shoreline. Federal and state authorities each prepared Environmental Impact Statements. In addition, federal authorities prepared what is commonly called a "Section 4(f) Statement" to show that the Secretary had determined that there was no feasible and prudent alternative to the use of the parkland and that the harm to the property would be minimized. See 49 U.S.C.A. Sec. 303(c) (West Supp.1987) (formerly 49 U.S.C. Sec. 1653(f) (1982)); 23 U.S.C. Sec. 138 (1982). Ringsred disputes the adequacy of the Environmental Impact/Section 4(f) Statement. He argues on appeal, as he did in the district court,[1] that the authorities failed to consider terminating the freeway at 10th Avenue East as a possible alternative and that the decision to allow construction to 26th Avenue East was arbitrary, capricious, and an abuse of discretion. The district court rejected these arguments. We affirm.
 
 
 2
 The I-35 project has an extensive history, which we will only broadly outline here. In 1958, the state requested federal approval to extend I-35 from Mesaba Avenue to 68th Avenue East. A few months later, the federal authorities approved the extension only to 10th Avenue East. In the early 1970's four major studies were conducted relating to the transportation problems within the city of Duluth. One of those studies, the Eckbo Corridor Study Report, established certain traffic movement objectives for Duluth. The Environmental Impact/Section 4(f) Statement, which was initially drafted and circulated for comment in 1973 and was given final approval by federal authorities in 1977, adopted these traffic movement objectives as the goals and objectives of the I-35 project. In November 1977, federal authorities approved the construction of I-35 through 26th Avenue East.
 
 
 3
 The Minnesota Environmental Quality Board approved the section of the state Environmental Impact Statement for Mesaba Avenue to 10th Avenue East in February 1978 and approved the section concerning 10th Avenue East to 26th Avenue East in May 1983. In January 1984, the Duluth city council withdrew its prior approval of I-35's extension to 26th Avenue East. The Mayor vetoed the council's decision, and the council, in turn, overrode the veto. The Minnesota legislature, however, directed the Minnesota Commissioner of Transportation to extend I-35 from 10th Avenue East to 26th Avenue East. See Minn.Stat.Ann. Secs. 161.12, 161.1245(4), (West 1986).
 
 
 4
 Ringsred then brought this action against the Secretary of the United States Department of Transportation, the Administrator of the Federal Highway Administration, the Commissioner of the Minnesota Department of Transportation, the Minnesota Department of Transportation District Engineer for the Duluth area, and the City of Duluth. The narrow task of the district court was to ensure the adequacy of the Final Environmental Impact/Section 4(f) Statement (FEIS) without substituting the court's judgment for that of the agency. Minnesota Pub. Interest Research Group v. Butz, 541 F.2d 1292, 1301 (8th Cir.1976), cert. denied, 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601 (1977). On appeal, Ringsred bears the burden of showing that the district court's findings accepting the adequacy of the Statement and the permissibility of the decision to proceed with construction were clearly erroneous. Sierra Club v. Froehlke, 534 F.2d 1289, 1300-01 (8th Cir.1976); Sierra Club v. Morton, 510 F.2d 813, 818 (5th Cir.1975).
 
 I.
 
 5
 Before the Secretary of Transportation can approve the use of publicly owned parkland or any land of historic significance, she must find that there is no feasible or prudent alternative to such use, and that all planning has been done to minimize the harm to such property. See 49 U.S.C. Sec. 303(c). The burden of proof is on Ringsred to show by a preponderance of the evidence that the Secretary acted improperly in approving the use of protected property. Louisiana Envtl. Soc'y, Inc. v. Dole, 707 F.2d 116, 119 (5th Cir.1983). The district court, reviewing the Secretary's decision based on the whole administrative record, applied the test enunciated in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the leading case interpreting section 4(f)'s requirements. Overton Park instructs the reviewing court to accord the Secretary's decision a "presumption of regularity," but nonetheless to engage in a "thorough, probing, in-depth review." Id. at 415, 91 S.Ct. at 823.
 
 
 6
 The first question in the Overton Park analysis is whether the Secretary acted within the scope of her authority. Id. In making this inquiry, the reviewing court must consider "whether the Secretary properly construed [her] authority to approve the use of parkland as limited to situations where there are no feasible alternative routes or where feasible alternative routes involve uniquely difficult problems," id. at 416, 91 S.Ct. at 823, and whether the Secretary could have reasonably believed that no such alternatives existed. Id. The second question is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." Id. The third and final question is whether the necessary procedural requirements were met. Id. at 417, 91 S.Ct. at 824. In this case we are concerned only with the first two issues, as Ringsred has not alleged that the Secretary did not follow the correct procedures, and the district court, upon its own examination, found no procedural deficiencies.
 
 
 7
 The Section 4(f) portion of the FEIS gives a detailed description of each of the three 4(f) properties that would be affected by the I-35 project, including Leif Erikson Park.[2] Specifically, the statement divides the park into three major segments and discusses the features of each, along with the park's overall unusual characteristics. It then lists the seven alternative routes that avoid the park and explains why each of these alternatives was either unfeasible or imprudent. The Environmental Impact portion of the statement analyzes each of the rejected alternatives in greater detail. The FEIS then details the effects on the park, including the amount of land to be used, the physical disruption during construction, and the changes in air, noise, water quality, vegetation, and accessibility. Finally, it describes the mitigation measures that will be taken. For example, the items in the rose garden, a central focus of the park, will be relocated to a storage site during construction. When construction is completed, the items, including small trees, shrubs, bushes, statues, and a fountain, will be replaced under the direction of a professional landscape architect in consultation with the City of Duluth and citizen groups. Moreover, although construction of the freeway will require the use of 0.2 acres of the 11.6 acre park, the Minnesota Department of Transportation will acquire an additional 2.3 acres of useable parkland from private owners, thus increasing the size of the park by 2.1 acres. The FEIS also discusses plans for noise reduction, relandscaping, and additional bicycle and pedestrian trails.
 
 
 8
 Ringsred argues that terminating the freeway at 10th Avenue East should have been considered as a prudent and feasible alternative to the extension of the freeway to 26th Avenue East. However, as the district court found in examining the FEIS, the 10th Avenue East terminus would also use property from Leif Erikson Park. The park is located between 8th and 13th Avenues East. The northern boundary of the park is London Road, a major east-west arterial street. The FEIS concludes that one impact of terminating the freeway at 10th Avenue East is to greatly increase the volume of traffic on arterial streets, such as London Road, which are adjacent to the park. Likewise, based on air quality studies that were conducted, the FEIS concludes that because of the traffic that would be funneled from I-35 onto London Road, the carbon monoxide concentration at the park's rose garden would be worse if construction ended at 10th Avenue East than if it continued to 26th Avenue East. Another consequence of terminating at 10th Avenue East is a great increase in the noise level at the rose garden area. Based on a noise impact study, the FEIS concluded that the 10th Avenue East to 26th Avenue East section showed a significant noise reduction along London Road due to the depressed roadway design, the tunnel under the rose garden, and reduced traffic volumes on London Road.
 
 
 9
 "An alternative route that also impacts upon parks and historic sites is not an 'alternative to the use' of such property" within the meaning of section 4(f). Druid Hills Civic Ass'n, Inc. v. Federal Highway Admin., 772 F.2d 700, 715 (11th Cir.1985) (quoting Louisiana Envtl. Soc'y v. Coleman, 537 F.2d 79, 85 (5th Cir.1976)). The term "use" is to be broadly construed, and should include any alternative that impairs the utility of the 4(f) property. See Department of Transportation Order No. 5610.1A, p 9(c)(1), 36 Fed.Reg. 23681 (1971) (the Statement must describe any 4(f) land that is "affected or taken" by the project); see also Adler v. Lewis, 675 F.2d 1085, 1091-92 (9th Cir.1982). The harmful effects of increased noise levels, air pollution, decreased accessibility, and negative visual impact of the 10th Avenue East terminus constitutes a use of the park as much as does a territorial encroachment. See D.C. Fed'n of Civic Ass'ns v. Volpe, 459 F.2d 1231, 1239 (D.C.Cir.1971), cert. denied, 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972). Since the intent of Congress in enacting section 4(f) was to ensure that the protection of parkland was given prime importance in considering where to build federal roads and highways, Overton Park, 401 U.S. at 412-13, 91 S.Ct. at 821-22, the Secretary did not violate the statute by excluding from consideration an alternative that had an equal or greater negative impact on the aesthetic value of the land.
 
 
 10
 Ringsred asserts that the conclusion that the 10th Avenue East alternative would have an equal or greater impact on the park is merely a post-hoc rationalization proffered by the appellees and accepted by the district court. We reject this argument. The district court carefully reviewed the whole record that was before the agencies at the time the decision was made, see 5 U.S.C. Sec. 706 (1982), and concluded that the Secretary properly understood the scope of her authority and that her decision was not arbitrary, capricious, or an abuse of discretion. Ringsred has not met his burden of showing these findings to be clearly erroneous.
 
 II.
 
 11
 Ringsred makes several other arguments concerning the Secretary's responsibilities under section 4(f). First, he asserts that other alternatives, namely that of a parkway-type facility and that of a depressed route that follows the alignment of London Road (alternative 4A in the FEIS), were arbitrarily dismissed. We believe that the FEIS adequately describes why these alternatives are imprudent. The Secretary reasonably concluded that a parkway would not remove heavy commercial traffic from local streets and residential areas. Since this was one of the main objectives of the project, the parkway was dismissed from further consideration. While the Secretary is obliged to consider all reasonable alternatives, an alternative that does not effectuate the project's purposes is, by definition, unreasonable, and she need not evaluate it in detail. The Secretary also gave adequate attention to the 4A alternative. The FEIS notes eight specific disadvantages of the alignment of alternative 4A.[3] Ringsred argues that the appellees were required to apply precisely the same mitigation measures to alternative 4A that were applied to the chosen alternative. We find no support for such an exacting requirement. The method used for analyzing the various alternatives had a rational, consistently applied basis that enabled the Secretary to take into account the relevant considerations. See Louisiana Envtl. Soc'y, 707 F.2d at 123. We cannot conclude that the Secretary's dismissal of these two alternatives was arbitrary and capricious.
 
 
 12
 Ringsred also claims that the freeway will affect the use of the Lake Superior shoreline and that appellees failed to evaluate these effects under section 4(f). Section 4(f) is applicable only if the affected land is publicly owned and designated or administered as a public park, recreational area, or wildlife and waterfowl refuge. National Wildlife Fed'n v. Coleman, 529 F.2d 359, 369-71 (5th Cir.), cert. denied, 429 U.S. 979, 97 S.Ct. 489, 50 L.Ed.2d 587 (1976). Ringsred states only that the land is publicly owned and has failed to introduce sufficient evidence to show that it meets any of the other prerequisites for section 4(f) treatment. Thus, the Secretary did not err in failing to consider the shoreline as 4(f) property.
 
 
 13
 Finally, Ringsred contends that the Secretary abdicated her responsibilities under section 4(f) by allowing local officials to elect to terminate the I-35 project at 10th Avenue East. Since the state officials decided to approve construction through 26th Avenue East, this issue is moot, and we need not address it here.
 
 III.
 
 14
 In addition to his allegations of section 4(f) violations, Ringsred also claims that the FEIS does not meet the requirements of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. Secs. 4321-4347 (1982 & Supp. II 1984). We have thoroughly examined the record and can find nothing of substance to add to the well-reasoned opinion of the district court. Finding no error of law or clearly erroneous factual finding, we conclude that the appellees complied with NEPA and the resulting decision was neither arbitrary, capricious, nor an abuse of discretion.
 
 
 15
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota
 
 
 [2]
 The effects on two of those properties, Branch's Hall and the Endion Depot, are moot issues. Branch's Hall, located on Superior Street between 4th and 5th Avenues East, has already been demolished to complete the Mesaba to 10th Avenue East section of the project. The Endion Depot has been relocated outside the path of the freeway
 
 
 [3]
 The Section 4(f) Statement noted the following disadvantages with the 4A alternative: (1) restricts access to the properties on the north side of London Road; (2) eliminates access from Superior Street to London Road in this area; (3) negative air, noise, and visual impacts to the park and adjacent properties; (4) eliminates the one way traffic operation of 12th and 14th Avenues East; (5) disrupts continuity of London Road by eliminating London Road west of 14th Avenue East; (6) isolates the park from the community; (7) requires demolition of the Curling Club building; (8) requires acquisition of additional residential and commercial property south of London Road
 FEIS at 268.