865 P.2d 1198

JOAB, INC. and NU–MEX Landfill, Inc., Applicants–Appellants,

v.

Judith M. ESPINOSA, Secretary of Environment, New Mexico Environment Department, Appellee.

CONCERNED CITIZENS OF SUNLAND PARK, Intervenor–Appellant,

v.

Judith M. ESPINOSA, Secretary of Environment, New Mexico Environment Department, Appellee.

Nos. 13677, 13682.

Court of Appeals of New Mexico.

Sept. 7, 1993.

Certiorari Denied Nov. 24, 1993.

Douglas Meiklejohn, New Mexico Environmental Law Center, Santa Fe, for intervenor-appellant Concerned Citizens of Sunland Park.

Paul G. Bardacke, Peter S. Kierst, Eaves, Bardacke & Baugh, P.A., Albuquerque, Darcy Alan Frownfelter, Chavez, Frownfelter, Leal & Rohman, L.L.P., El Paso, TX, for appellants Joab, Inc. and Nu–Mex Landfill, Inc.

William R. Brancard, Asst. Atty. Gen., Geoffrey Sloan, Sp. Asst. Atty. Gen., Santa Fe, for appellee Judith M. Espinosa.

## OPINION

MINZNER, Chief Judge.

Joab, Inc. and Nu–Mex Landfill (Joab) and Concerned Citizens of Sunland Park, Inc. (Concerned Citizens) pursue sepa-

rate appeals from an administrative decision and order of the New Mexico Environment Department (NMED) granting Joab a five-year permit to develop a thirty-five acre landfill in Dona Ana County. Joab asserts that (1) denial of its application for a ten-year permit and limiting the size of the landfill area to thirty-five acres was arbitrary, capricious, and an abuse of discretion; and (2) the decision of the Secretary was not supported by substantial evidence and was contrary to law. Concerned Citizens asserts that (1) the Secretary's decision to issue the permit was not supported by substantial evidence; (2) the application for the permit should have been denied because the operation was a public nuisance; and (3) the procedures followed by the Secretary denied Concerned Citizens due process of law. Other arguments raised in the docketing statements but not briefed on appeal are deemed denied. *See State v. Fish,* 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985).

I

These consolidated appeals concern an existing landfill located in Sunland Park, New Mexico. In February 1990, Joab sought permits for the landfill and for a medical incinerator within the landfill site, a 515–acre parcel owned by Joab. Specifically, Joab sought a permit to use 62.5 acres of the parcel for ten years as a landfill. Joab filed its application with the Environmental Improvement Division of the New Mexico Health and Environment Department (EID), the predecessor to NMED. EID's functions have since been assigned to NMED, and this opinion refers to NMED and its Secretary, rather than to EID and its Director. *See* NMSA 1978, § 9–7A–4 (Repl.Pamp.1991). The applicable Solid Waste Management Regulations are those filed in April 1989. Solid Waste Management Regs., State of New Mexico Envtl. Improvement Bd. (April 14, 1989) (1989 Regs.).

A hearing officer conducted a prehearing conference in Sunland Park in April 1991.

At the prehearing conference, a number of parties were granted a right to intervene. Concerned Citizens, an incorporated organization of community residents, was one of the parties allowed to intervene. A hearing was held in Santa Teresa and Santa Fe in August 1991. About one hundred residents of Sunland Park testified in opposition to the landfill and the medical waste incinerator at the hearing. The hearing officer filed his report and recommended decision in October 1991. The hearing officer found that the City of Sunland Park favored the landfill but opposed the incinerator, and that the major opposition of the individual residents concerned the incinerator. The hearing officer recommended that the landfill permit be issued with conditions and that the incinerator permit be denied.

The Secretary divided her decision into two parts. In November 1991, she issued a Decision and Order concerning the landfill. In that Decision and Order, the Secretary described the legal and procedural context of Joab's application, including the fact that new regulations were pending pursuant to the Solid Waste Act, NMSA 1978, Sections 74–9–1 to –42 (Repl. Pamp.1992). *See* Solid Waste Management Regs., State of New Mexico Envtl. Improvement Bd. (Dec. 30, 1991) (1992 Regs.).

After noting the fact of pending new regulations, the Decision and Order states that, after 1992, applicants will face far different requirements than previous applicants. The Decision and Order then states, "In fairness to future applicants, the Secretary has limited the maximum duration of new permits under the present Regulations to five years." The Decision and Order conditioned the issuance of the permit on the installation of a liner and leachate collection system that would comply with the Water Quality Control Commission (Commission) standards. The Decision and Order requires NMED to approve the liner and leachate collection system and requires Joab to demonstrate to NMED that the liner and leachate collection system will prevent discharge of contaminants in violation of Commission standards. Both

Concerned Citizens and Joab filed motions for reconsideration.

In December 1991, the Secretary issued a Decision and Order denying the application to operate a medical waste incinerator. Neither party appeals from this Decision and Order.

In January 1992, the Secretary denied both motions for reconsideration of the November Decision and Order. Both parties appeal from this Decision and Order. On appeal, Joab basically argues that the permit should have been granted for a ten-year term, while Concerned Citizens basically argues that the Secretary erred in granting the permit on any terms. We first address this Court's jurisdiction and identify the standard of review.

## II

■ This Court has jurisdiction under Section 74–9–30(A). In exercising our jurisdiction to review administrative agency decisions made under the Solid Waste Act, this Court considers whether, as a matter of law, the decision is arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, or otherwise contrary to law. Section 74–9–30(B). Under Section 74–9–30(B), "the court of appeals shall set aside the administrative action only if it is found to be" within one of the foregoing categories. This standard of review requires us to give the agency's decision a degree of deference.

> It is the function of the reviewing court to searchingly and carefully scrutinize the entire record in order to determine whether the agency's conclusions are drawn from the facts. However, the validity of agency action is presumed, and substantial deference is afforded the agency's expertise in interpreting those facts. [Footnotes omitted.]

5 Jacob A. Stein et al., *Administrative Law* § 51.03, at 51–133 to –34 (1993). We first address the arguments raised by Concerned Citizens, which raise issues concerning the propriety of granting the permit on any terms.

## A

■ The Secretary found that the landfill would discharge contaminants into the groundwater unless it had a liner and leachate collection system. Concerned Citizens argues that this finding indicates that Joab failed to satisfy its burden of proof. We disagree.

We note that the 1989 Regulations do not require the application to demonstrate that the landfill will not discharge contaminants in violation of groundwater standards, but considers this to be additional information that the NMED may require on applications. 1989 Regs. 201.C.1.h. Thus, although we agree with Concerned Citizens that Joab had the burden of proof at the administrative hearing, we are not persuaded that the necessity for the condition imposed by the Secretary indicates Joab failed to carry that burden.

There was expert testimony from Neil Weber, the chief of NMED's Solid Waste Bureau, that a liner with a maximum coefficient of permeability of $1 \times 10^7$ centimeters per second, which is the specification for the liner in the Decision and Order, would comply with Commission groundwater standards. Weber gave his opinion that the permit should be issued, if the conditions outlined in Exhibit 51 were met. Although Karl Souder, Concerned Citizens' hydrology expert, gave his opinion that the application should not be approved and its deficiencies could not be cured by imposing conditions, he did state that the minimum required to cure the deficiency would be a liner and leachate collection system. An expert witness for Joab also testified that a liner with the hydraulic conductivity of $1 \times 10^7$ centimeters per second would easily prevent percolation from the landfill. We conclude that there was substantial evidence in the record to support the issuance of the permit conditioned on installing the liner and leachate collection system.

■ Concerned Citizens also argues that there is no provision in either the Act or the regulations allowing the issuance of a permit

conditioned on a subsequent demonstration of compliance with the regulations. Concerned Citizens acknowledges that the Act provides for the issuance of permits with terms and conditions. Section 74-9-24. *Cf. Tate v. Illinois Pollution Control Bd.,* 188 Ill.App.3d 994, 136 Ill.Dec. 401, 419-22, 544 N.E.2d 1176, 1194-97 (1989) (authority of County Board to impose conditions on site of solid waste disposal facility not challenged), *cert. denied,* 129 Ill.2d 572, 140 Ill.Dec. 680, 550 N.E.2d 565 (1990). Further, the regulations provide: "Any terms or conditions of the permit or any Section of these regulations shall be enforceable to the same extent as a regulation of the Board." 1989 Regs. § 203.D. Nothing in either the Act or the regulations prohibits a condition requiring subsequent demonstrations of compliance with the regulations. *See also* § 74-9-36 (provision for enforcement of conditions of a permit).

We agree with NMED that the Act contemplates that the Secretary will exercise her discretion in imposing conditions and terms, allowing her to address concerns raised at the public hearing when the applicant submits a plan to overcome potential causes for denial of the application. *See* § 74-9-24(D). Although not formally labeled an affirmative action plan, *id.,* Exhibit 51 and the requirement that Joab obtain NMED approval of the liner and leachate collection system operate as the functional equivalent of such a plan. To disallow requirements or conditions in a permit based on demonstrations of future compliance with regulations would unduly limit the Secretary's options in responding to evidence introduced during the public hearing process. Adopting Concerned Citizens' argument would essentially require the Secretary to deny any application where the evidence created a concern about potential violations of the regulations, regardless of whether these concerns might be addressed by imposing conditions to assure compliance. We do not read either the Act or the regulations to limit the Secretary's decision-making authority in this way. *See generally Tate,* at 419-22, 544 N.E.2d at 1194-97.

■ Concerned Citizens also argues that the issuance of the permit conditioned on a subsequent demonstration violates due process. Concerned Citizens does not dispute that NMED complied with the notice requirements of both the Act and the regulations, but argues that the application did not make the necessary demonstration of compliance concerning groundwater safety; by not requiring that Joab make this demonstration, the decision deprives Concerned Citizens of the opportunity to present evidence on the vital and complex issues concerning the liner and leachate collection system.

Procedural due process requires a reasonable identification of the issues to be considered and an opportunity to be heard. *See Jones v. New Mexico State Racing Comm'n,* 100 N.M. 434, 436, 671 P.2d 1145, 1147 (1983). Three months before the hearing and at the beginning of the hearing itself, the Solid Waste Bureau also took the position that a liner should be required. As noted above, there was expert testimony from Joab and some intervenors on the issue of the liner and leachate collection system. While recognizing the importance of groundwater quality to the general public and public input in the decision-making process, we are not persuaded that issuing the conditional permit in this case denied Concerned Citizens an opportunity to present evidence or question the applicant about the liner and leachate collection system.

To the extent Concerned Citizens relies on Section 74-9-20(B), which mandates that the application shall contain all information required by the Secretary to determine if issuing the permit would be consistent with the Act, we believe that the application in this case contained the necessary information. As noted above, neither the Act nor the regulations mandate that specific information about the liner and leachate collection system be contained in the application. *See* 1989 Regs. 201.C.1.h. We hold that Concerned Citizens was not denied due process by the requirements that Joab install a liner and leachate collection system approved by NMED and also demonstrate to NMED that

the system would prevent the discharge of contaminants into the groundwater in compliance with Commission standards. *See generally Santa Fe Exploration Co. v. Oil Conservation Com'n,* 114 N.M. 103, 835 P.2d 819 (1992).

An applicant is required to show the location of any Holocene fault on a site map. 1989 Regs. § 201.C.1 (requiring applicants to provide information on application form, which requires showing the location of any Holocene fault). Joab's site map states explicitly that there are no Holocene faults in or near the area. Concerned Citizens does not cite any authority that supports the proposition that this showing is inadequate or that expert testimony is required to show the absence of a Holocene fault. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (issues not supported by cited authority will not be considered). *See generally National Council on Compensation Ins. v. New Mexico State Corp. Comm'n,* 107 N.M. 278, 290, 756 P.2d 558, 570 (1988) (expert testimony not required on ultimate factual issues of whether the rate increase was excessive or whether there existed too little information to assess the filing). We conclude that Joab made the necessary showing in this case.

■ Concerned Citizens recites the testimony of nearby residents about problems with trucks accessing the landfill and odor and flies from the landfill and asserts that the permit should have been denied because, based on uncontroverted evidence, the landfill is a public nuisance. A public nuisance must affect a considerable number of people or an entire community. *Environmental Improvement Div. v. Bloomfield Irrigation Dist.,* 108 N.M. 691, 696, 778 P.2d 438, 443 (Ct.App.), *cert. denied,* 108 N.M. 681, 777 P.2d 1325 (1989). The majority of complaints concerned the medical incinerator, which is not at issue in this appeal. Although there was testimony about the landfill's negative impact, this evidence did not require the Secretary to determine that the landfill adversely affected the entire community's

health, welfare, or safety. *See, e.g., Padilla v. Lawrence,* 101 N.M. 556, 559–61, 685 P.2d 964, 966–68 (Ct.App.) (odors, dust, flies, and noise were a private, but not a public, nuisance), *cert. denied,* 101 N.M. 419, 683 P.2d 1341 (1984).

■ Concerned Citizens also challenges the application based on Joab's asserted failure to demonstrate the knowledge and ability to operate a solid waste facility. *See* 1989 Regs. § 203.E.4. As NMED points out, however, the regulations do not require a specific showing in this regard, but provide that the Secretary may deny the application if the applicant fails to show the knowledge and ability to operate a facility. There was evidence that Joab converted an uncontrolled landfill into a sanitary landfill and had operated it for several years. The application details how the landfill would be operated and includes job descriptions, construction diagrams, and remedies for possible problems. The Secretary did not err in granting the permit on this basis.

Finally, Concerned Citizens argues that the Decision and Order insufficiently protects against contamination by leachate discharge. They contend the permit should require that the liner and leachate collection system be installed under existing fill areas and that no waste be disposed of until the liner and leachate collection system is installed. We conclude that the Decision and Order contains the conditions Concerned Citizens argues should be present. The Decision and Order contains the requirement that "[a]ll fill areas in the Permit Area and any other expansion of the existing landfill will be constructed with a liner and a leachate collection system." Other paragraphs of the Decision and Order specify the kind of liner and leachate collection system that is required and provide for approval by NMED. The Decision and Order specifically provides that Joab "must also demonstrate that the liner and leachate collection system design will not allow a discharge to groundwater in violation of Commission standards." We next address Joab's arguments on appeal.

## B

In considering Joab's arguments on appeal, we note at the outset that Joab has failed to comply with SCRA 1986, 12–213(A)(3) (Repl.1992). Under this Rule of Appellate Procedure, a party is precluded from challenging a decision on the grounds of insufficiency of the evidence where, in the argument section of an appellate brief, appellant fails to identify with particularity the specific findings of facts which it contends are not supported by substantial evidence. *Id.; see also Smith v. Galio,* 95 N.M. 4, 6, 617 P.2d 1325, 1327 (Ct.App.1980) (a generalized attack on the findings will not be considered). Joab has failed to specifically challenge individual findings adopted by the Secretary, and thus has waived its arguments that the Secretary's findings are not supported by substantial evidence. However, Joab also argues that the decision was arbitrary and capricious because it was not based on any evidence in the record and because it radically departs from past practice without proper notice or reasonable justification. These arguments challenge the Decision and Order on questions of law, which we address.

Joab relies on the Secretary's reference to "fairness to future applicants" as the sole rationale for her decision not to grant a ten-year permit. This reference was not incorporated into the Secretary's findings and conclusions of law, however, and we construe it as containing only part of the explanation for her decision to refuse Joab a ten-year term. In evaluating that explanation, we limit ourselves to determining whether the Secretary abused her discretion or otherwise acted contrary to law. We conclude she did not.

The relevant regulation states: "The Director shall not issue any permit for a period longer than 10 years, which may be renewed." 1989 Regs. § 203.A. Nothing in the regulation mandates that permits should be granted for the maximum period of time; in fact, the regulation by its plain language authorizes permits for less than a ten-year period.

In view of her authority, we do not believe the statement contained in the background portion of the Secretary's Decision and Order was a rule change. At most, Joab has identified a change in policy. That policy seems to be a reasonable exercise of the discretion given the Secretary by the legislature on the facts of record.

The Solid Waste Act, 1990 N.M. Laws, ch. 99, §§ 1–42, 72, & 73, as amended, 1991 N.M. Laws, ch. 194, directed and authorized a comprehensive solid waste management program. Section 74–9–2(A). The Act required the Secretary to prepare a comprehensive and integrated solid waste management plan no later than December 31, 1992, and to design a program consistent with the plan by December 1, 1993. Sections 74–9–4, –12. The Act required the plan to be fully implemented by July 1, 1994, and reexamined every three years. Section 74–9–12.

The Secretary, in her discretion, could choose to implement the comprehensive solid waste management plan by reviewing all solid waste landfills through the application process within a shorter period of time than ten years. For example, the record in this case indicates that the permit process occupied most of a two-year period. If the Secretary wishes to try to review the plan through the application process, a five-year permit term would allow her to begin the review, pursuant to the Act, at the end of three years, with the possibility of reaching a decision within the five-year term. *See generally In re Permian Basin Area Rate Cases,* 390 U.S. 747, 800, 88 S.Ct. 1344, 1377, 20 L.Ed.2d 312 (1968) (administrative authority must be permitted to adapt policies to demands of changing circumstances); *Public Serv. Co. v. New Mexico Pub. Serv. Comm'n,* 112 N.M. 379, 383, 815 P.2d 1169, 1173 (1991) (given its broad legislative mandate, the Commission properly considered factors beyond the statutory requirements). We conclude that the change in policy has a reasonable justification. As applied in this case, we disagree with Joab that it is not based on any evidence in the record.

We recognize that Weber testified that the changes in the regulations should not make a

significant difference in the length of the permit period and that permits had been issued for ten years, in part, in order to allow NMED time to review applications for all existing facilities. In addition, he stated that these applicants had assurances that they would meet the requirements of the regulations for the ten-year period.

Nevertheless, at least two of the intervenors argued at the hearing that the permit's term should be for no more than one year because of the anticipated new regulations and the extensive conditions that would be required to make the application comply with the 1989 regulations. There was expert testimony on behalf of Concerned Citizens that the permit should be issued for no more than a one-year term.

■ Joab argues that the expert was not competent to testify concerning the permit's term. Joab contends that Souder, who was qualified as an expert in groundwater hydrology, contaminant hydrology, landfill siting, and groundwater protection regulatory compliance, was not qualified as an expert in landfill siting. We believe that Souder's conceded areas of expertise qualified him to express an opinion regarding the appropriate length of a permit. In addition, we think that there was sufficient foundation to support the ruling qualifying him as an expert in landfill siting.

Thus, we conclude that the evidence in this case on an appropriate permit term was conflicting. In particular, the condition requiring Joab to demonstrate compliance with the regulations after the installation of the liner and leachate collection system indicates a need for increased oversight in this particular case. Under her authority and based on the evidence concerning the potential for groundwater contamination, the Secretary could reasonably limit the term of Joab's permit to less than ten years.

Concerned Citizens has argued that the permit should have been issued, if at all, for only one year. This issue is not properly before us. Concerned Citizens has neither taken a cross-appeal nor argued this issue in the brief in chief filed in its own appeal. *Cf.* SCRA 1986, 12–201(C) (Repl.1992) (an appellee may without taking a cross-appeal raise issues for the purpose of allowing the appellate court to affirm or raise issues for determination only if the appellate court should reverse in whole or in part). However, in view of our characterization of the evidence as conflicting, we conclude that the argument provides no basis for reversal.

Joab's reliance on Exhibit 51, its letter to the program manager for the Solid Waste Bureau, is misplaced. Despite the testimony of some witnesses characterizing this letter as a stipulation, the letter states only that Joab will meet the conditions outlined. When these conditions were initially read into the record, they were presented as part of NMED's recommendation to grant the application. As Weber's testimony makes clear, however, the recommendation was from the Solid Waste Bureau, which is only one of several bureaus in NMED. It is also clear that the Solid Waste Bureau reviews the application and makes a recommendation, but the decision to issue a permit is made by NMED's Secretary. Joab has not cited any authority or evidence demonstrating that the Solid Waste Bureau had authority to bind NMED by this letter. We conclude that the letter is an agreement by Joab to fulfill certain conditions and an indication that the Solid Waste Bureau would recommend, as it did at the hearing, the issuance of a ten-year permit with the outlined conditions.

Joab recites various economic evidence it claims is relevant to the permit term, including the cost of preparing and defending a permit and the lost revenues during the term for which the permit is not granted. However, it cites to no evidence in the record concerning these costs. *See State ex rel. Alleman v. Shoats*, 101 N.M. 512, 517, 684 P.2d 1177, 1182 (Ct.App.1984) (matters not of record will not be considered on appeal).

Joab's argument that applicants need to know the permit term in advance of filing the application is not persuasive. The regula-

tions state the range of the permissible permit terms, and a completed application would be necessary for the Secretary to exercise her discretion in determining the appropriate permit term within this range. Moreover, there was testimony that Joab planned to operate the landfill for fifty to eighty years, and the Decision and Order notes that the total landfill area is planned for 390 acres in eighty years.

For these reasons, we affirm the Decision and Order issuing a permit for a five-year term. As noted by Joab in its brief in chief, the issues of the permit term and the size of the permitted landfill area are inextricably intertwined. Finding no error in the five-year permit term, we affirm the size of the permitted landfill area.

### III

The request for oral argument is denied. *See* SCRA 1986, 12–214 (Repl.1992). As we are not persuaded by arguments raised in the appeals of Concerned Citizens and Joab, we affirm the Secretary's Decision and Order issuing a conditional permit for the landfill.

IT IS SO ORDERED.

DONNELLY and ALARID, JJ., concur.