874 P.2d 798

**NATIONAL TRUST FOR HISTORIC PRESERVATION, a Congressionally chartered nonprofit corporation, Sierra Club, a California nonprofit corporation, National Parks and Conservation Association, a District of Columbia nonprofit corporation, The Wilderness Society, a District of Columbia nonprofit corporation, and Friends of the Albuquerque Petroglyphs, a New Mexico nonprofit corporation, Plaintiffs–Appellants,**

v.

**CITY OF ALBUQUERQUE, a municipal corporation, City of Albuquerque Public Works Department, City of Albuquerque Environmental Planning Commission, New Mexico State Highway and Transportation Department, and Louis Medrano, Defendants–Appellees.**

No. 13266.

Court of Appeals of New Mexico.

April 18, 1994.

David A. Doheny, Gen. Counsel, Elizabeth S. Merritt, Associate Gen. Counsel, Washington, DC, Kenneth J. Cassutt, Potter, Mills & Cassutt, P.A., Santa Fe, for plaintiffs-appellants.

David S. Campbell, City Atty., Edward R. Pearson, Robert White, Asst. City Attys., Albuquerque, for defendants-appellees, City Defendants.

Arthur J. Waskey, Gen. Counsel, Reese C. Jones, Anne Lovely, Sp. Asst. Attys. Gen., Santa Fe, for defendants-appellees, New Mexico State Highway & Transp. Dept.

Tom Udall, Atty. Gen., Sarah E. Alley, Daniel Yohalem, Asst. Attys. Gen., Santa Fe, for amici curiae, State Historic Preservation Div., State Historic Preservation Officer.

## OPINION

HARTZ, Judge.

Plaintiffs filed suit in district court seeking declaratory and injunctive relief against further planning, funding, contracting, and construction by Defendants of a one-mile segment of Unser Boulevard in Albuquerque (the Project). Under the Project design, the roadway borders the Petroglyph National Monument and at two sites the noise berm at the side of the roadway enters the Monument. Plaintiffs contend that the Project violates the New Mexico Prehistoric and Historic Sites Preservation Act, NMSA 1978, §§ 18–8–1 to 18–8–8 (Repl.Pamp.1991).

A few weeks after the complaint was filed, Plaintiffs moved for a preliminary injunction and Defendants moved to dismiss. The district court dismissed the complaint on the ground that Plaintiffs did not have standing to bring an action under the Act and, in the alternative, denied on the merits Plaintiffs' motion for a preliminary injunction. Plaintiffs, joined by the State Historic Preservation Division (SHPD) and the State Historic Preservation Officer (SHPO) as amici curiae, appeal. We hold that Plaintiffs had standing but affirm the district court's denial of the motion for a preliminary injunction. We remand for further proceedings on the merits of Plaintiffs' claims under the Act for declaratory relief and a permanent injunction.

## I. STANDING

Section 18–8–7 states:

No public funds of the state or any of its agencies or political subdivisions shall be spent on any program or project that requires the use of any portion of or any land from a significant prehistoric or historic site unless there is no feasible and prudent alternative to such use, and unless the program or project includes all possible planning to preserve and protect and to minimize harm to the significant prehistoric or historic site resulting from such use. The provisions of this section may be enforced by an action for injunction or other appropriate relief in a court of competent jurisdication [jurisdiction].

The question is *who* may bring an action permitted by the second sentence of the section.

Plaintiffs contend that the answer is provided by a regulation adopted by the SHPO. Regulations For the Implementation of the New Mexico Prehistoric and Historic Sites Preservation Act, N.M. Historic Preservation Div. Rule 89–2 § 10 (Sept. 15, 1989), states:

"Either the SHPO or any other interested person may seek enforcement of the provisions of the [Act]." Plaintiffs argue that the regulation has the force of law because the Act invests the SHPO with authority to administer the Act, Section 18–8–4(A), and to issue regulations for the implementation of the Act, Section 18–8–8. The argument is an interesting one. It also appears to be novel. None of the appellate briefs has supplied us with precedent in which a court considered whether an administrative regulation could confer a private right of enforcement not otherwise conferred by statute.

We need not resolve the issue. Regardless of the efficacy of Section 10 of SHPD Rule 89–2, Plaintiffs had the right to bring this action.

■■■ The appellate briefs appear to agree that *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), sets forth the appropriate test for deciding, in the absence of an explicit statutory directive, whether Plaintiffs may bring this action. We disagree. No reported New Mexico decision has followed *Cort.* We explain why we do not believe that *Cort* is determinative.

*Cort* held that a shareholder had no federal cause of action against a corporation and its directors for damages for making campaign contributions that violated a federal criminal statute. The United States Supreme Court set forth a four-factor test for determining whether to recognize an implied private cause of action: (1) Was the statute enacted for the special benefit of a class of which the plaintiff is a member? (2) Is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy? (3) Would a private remedy either frustrate or assist the underlying purpose of the legislative scheme? and (4) Would implying a federal remedy be inappropriate because the subject matter is one traditionally relegated to state law? *Id.* at 78, 95 S.Ct. at 2087–88.

The *Cort* test does not control here because it was developed to assist in the interpretation of *federal* statutes. Different considerations arise when state courts decide matters of state law. One difference is obvious. As Plaintiffs note in their brief-in-chief, the fourth factor, which invokes federalism,

has no application when a state court is interpreting state law.

A second difference is more subtle but also fundamental. Federal courts have very limited authority beyond that conferred by statute or the Constitution. As the United States Supreme Court has stated, "The instances where we have created federal common law are few and restricted." *Wheeldin v. Wheeler,* 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963). "[A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Texas Indus. v. Radcliff Materials,* 451 U.S. 630, 641, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (footnotes omitted). Thus, the *Cort* test is essentially a tool for determining legislative intent. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979) ("The central inquiry [under *Cort*] remains whether Congress intended to create, either expressly or by implication, a private cause of action.").

■■■ A state court, in contrast, may look beyond legislative intent in exercising common-law authority to recognize a private cause of action. For example, a common-law court may utilize the statute solely to demonstrate what is public policy; that public policy then forms the predicate for a common-law cause of action. *See Gandy v. Wal–Mart Stores,* 117 N.M. 441, 872 P.2d 859 (1994) (common-law cause of action for retaliatory discharge); *Michaels v. Anglo Am. Auto Auctions,* 117 N.M. 91, 869 P.2d 279 (1994) (same); *cf.* Roger J. Traynor, *Statutes Revolving in Common–Law Orbits,* 17 Cath. U.L.Rev. 401 (1968). In short, a state court, because it possesses common-law authority, has significantly greater power than a federal court to recognize a cause of action not explicitly expressed in a statute.

■■■ This is not to say that the first three *Cort* factors are irrelevant to a state court. It is simply that they are not exclusive. *See*

*San Lorenzo Educ. Ass'n v. Wilson,* 32 Cal.3d 841, 187 Cal.Rptr. 432, 434–35 n. 5, 654 P.2d 202, 204–05 n. 5 (1982) (en banc) (*Cort* is inapplicable when question is whether common law action for damages may be implied from statute). A state's public policy, independent of the first three *Cort* factors, may be determinative in deciding whether to recognize a cause of action.

■ Such is the situation in the present case. The controlling New Mexico public policy was expressed in *De Vargas Savings & Loan Ass'n v. Campbell,* 87 N.M. 469, 535 P.2d 1320 (1975). In *De Vargas* four savings and loan associations sought judicial review of the decision by the savings and loan supervisor of the New Mexico Department of Banking to grant the Los Alamos Building and Loan Association authority to operate a branch office in Santa Fe. The Savings and Loan Act provided that "any association or person aggrieved and directly affected" by a decision of the supervisor could seek review by appeal to the district court. NMSA 1953, § 48–15–133(A) (Repl.Vol. 7, Supp.1972). Rather than relying entirely on the statute, however, the Court wrote: "It seems fundamental that a plaintiff has standing to protect himself against injury as a result of unlawful governmental action, even in the absence of a controlling statute or constitutional provision." *De Vargas,* 87 N.M. at 472, 535 P.2d at 1323. We recently relied on this language from *De Vargas* in *Ramirez v. City of Santa Fe,* 115 N.M. 417, 421, 852 P.2d 690, 694 (Ct.App.1993). At the least, *De Vargas* compels the conclusion that when, as in our case, the governing statute is silent regarding who may bring a statutorily recognized action to require a public agency to comply with state law, one who is "injured" by the allegedly unlawful conduct ordinarily may bring suit.

■ The determination of who is an "injured" party may be difficult in some circumstances. But the answer for our present purposes is provided by *De Vargas.* The opinion in that case specifically approved *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). *De Vargas,* 87 N.M. at 472, 535 P.2d at 1323. The allegations of injury by Plaintiffs in this case are, in our view, indistinguishable from those made by the organization whose standing was affirmed in *SCRAP,* 412 U.S. at 685–87, 93 S.Ct. at 2415–16. Each Plaintiff alleged that it had members who "use, enjoy, derive benefit from, and have a substantial interest in protecting and preserving the character and integrity of the [Monument], which is threatened by the construction of the Project."

■ We recognize that a statute may explicitly deny a private cause of action against a public agency. *See De Vargas,* 87 N.M. at 473, 535 P.2d at 1324. Also, it may be appropriate to deny standing when recognition of a private cause of action would undermine the effective functioning of a statutory scheme for enforcement of legislation. *See id.* Here, for example, the Act provides that it "shall be administered by the state historic preservation officer in consultation with the cultural properties review committee." Section 18–8–4(A). Perhaps in some circumstances we would refuse to recognize a private cause of action that would interfere with the SHPO's administration of the Act. But we need not decide that issue now. As Amicus, the SHPO has supported Plaintiffs' claim.

Thus, we uphold Plaintiffs' standing to bring their action for declaratory and injunctive relief under the Act.

## II. GROUNDS FOR PRELIMINARY INJUNCTION

Before turning to the merits of the district court's ruling that the Plaintiffs had not established grounds for a preliminary injunction, we must address a procedural matter. Prior to the filing of Plaintiffs' claim, the SHPO had reviewed whether the Project would comply with Section 18–8–7. Pursuant to SHPD Rule 89–2 the SHPO corresponded with the City, seeking justification for various elements of the design of the Project. He eventually wrote the City that he had very serious concerns about the design, stating that the City had not adequately documented its decision to proceed with the current design. What, if any, legal consequences flow from this decision by the SHPO?

Plaintiffs contend that the district court should defer to the SHPO's conclusions. The Amici brief goes further, contending that if a public agency disagrees with the SHPO's determination, the agency must seek court review through a petition for a writ of certiorari. The district court should then overturn the SHPO's decision only if it was arbitrary, capricious, contrary to law, or not supported by substantial evidence.

■ We disagree with Amici. The Act does not contemplate that the SHPO will issue permits or licenses or must otherwise grant permission to a project before it can be undertaken. The sole manner of enforcement of Section 18–8–7 provided in the Act appears in the final sentence of that section: "The provisions of this section may be enforced by an action for injunction or other appropriate relief in a court of competent [jurisdiction]." In other words, if a public agency is expending funds in violation of Section 18–8–7, the remedy is to bring an action in court. In such an action the plaintiff has the burden of persuasion. *See Pentecost v. Hudson*, 57 N.M. 7, 9, 252 P.2d 511, 512 (1953) ("he who affirms must prove"); *Baca v. Bueno Foods*, 108 N.M. 98, 102, 766 P.2d 1332, 1336 (Ct.App.1988) ("One who seeks relief under a statute has the burden of proving that he comes within its terms."). Plaintiffs, who filed an action for injunction, had to prove the facts supporting their claim for relief. *See LaBalbo v. Hymes*, 115 N.M. 314, 318, 850 P.2d 1017, 1021 (Ct.App.) (stating what a party seeking preliminary injunction must show), *cert. denied*, 115 N.M. 359, 851 P.2d 481 (1993); *Lovell v. Brennan*, 728 F.2d 560, 563 (1st Cir.1984) (movant for injunction bears burden of persuasion).

■ Regulations issued by the SHPO cannot transform this statutory scheme. Although SHPD Rule 89–2 may well be proper as a regulation that enables the SHPO to acquire information to assist him in pursuing and prevailing in an action to enforce Section 18–8–7, the regulation is improper insofar as it attempts to replace (1) the statutory remedy of an action *against* the public agency (by the SHPO or another party) with (2) an action *by* the public agency for review of the SHPO's prior determination. The SHPO's authority to "issue regulations for the implementation" of the Act does not encompass the power to shift the burden of persuasion in a court proceeding from it or its allies to an opposing party. The SHPO cannot by regulation contradict the Act. *See In re Proposed Revocation*, 102 N.M. 63, 66, 691 P.2d 64, 67 (Ct.App.1984) (agency may not modify statutory provision through the device of regulations).

■ As for Plaintiffs' contention that the district court should defer to the SHPO's determination, we agree that the fact-finder may wish to give weight to any special expertise that the SHPO may have on disputed factual matters. *Cf. Joab, Inc. v. Espinosa*, 116 N.M. 554, 557, 865 P.2d 1198, 1201 (Ct. App.), *cert. denied*, 116 N.M. 801, 867 P.2d 1183 (1993) (on appeal from decision of administrative agency, court defers to agency's expertise in interpreting facts). Nevertheless, the fact-finder ultimately must resolve the facts and need not presume that the SHPO possesses special expertise, particularly if the SHPO makes no showing of special expertise. That is, the court need not defer to a determination by the SHPO simply because of the SHPO's authority and duties under the Act. *Cf. Martinez v. Martinez*, 101 N.M. 493, 497, 684 P.2d 1158, 1162 (Ct. App.1984) ("[F]act-finder is not bound to accept opinion evidence of an expert witness.").

■ We now examine the merits of the district court's denial of Plaintiffs' motion for a preliminary injunction.

> To obtain a preliminary injunction, a plaintiff must show that (1) the plaintiff will suffer irreparable injury unless the injunction is granted; (2) the threatened injury outweighs any damage the injunction might cause the defendant; (3) issuance of the injunction will not be adverse to the public's interest; and (4) there is a substantial likelihood plaintiff will prevail on the merits.

*LaBalbo*, 115 N.M. at 318, 850 P.2d at 1021. We review the district court's decision under an abuse-of-discretion standard. *Id.* To the extent that denial of the motion is based on rejection of the movant's evidence, we consider whether "it was rational for the trial court

to disbelieve the evidence offered by [the movant]." *Lopez v. Adams,* 116 N.M. 757, 758, 867 P.2d 427, 428 (Ct.App.1993), *cert. denied,* 116 N.M. 801, 867 P.2d 1183 (1994). We hold that the district court did not abuse its discretion in denying the motion. In particular, it was rational for the district court to find on the record before it that Plaintiffs had not presented sufficient persuasive evidence to establish a substantial likelihood that they would prevail on the merits.

What did Plaintiffs need to show to prevail on the merits? We repeat the first sentence of Section 18–8–7:

> No public funds of the state or any of its agencies or political subdivisions shall be spent on any program or project that requires the use of any portion of or any land from a significant prehistoric or historic site unless there is no feasible and prudent alternative to such use, and unless the program or project includes all possible planning to preserve and protect and to minimize harm to the significant prehistoric or historic site resulting from such use.

Guiding us in the interpretation of the quoted language are federal decisions construing Section 4(f) of the Department of Transportation Act (codified at 49 U.S.C. Section 303), which permits the Secretary of the Department of Transportation to approve transportation projects requiring the use of certain publicly owned land only if "(1) there is no prudent and feasible alternative to using that land; and (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use." (Virtually identical language appears in 23 U.S.C. Section 138.) When our legislature enacted Section 18–8–7 in 1989, it looked to the operative language of Section 4(f).

Thus, we follow federal law in paraphrasing the requirements of Section 18–8–7. First, a project may not "use" a protected site at all if there is a "feasible and prudent alternative" which involves no use of the site. Second, if the project surmounts the first

hurdle (thereby permitting some use of the site), the agency must plan to minimize the project's harm to the site. *See Louisiana Envtl. Soc'y v. Coleman,* 537 F.2d 79, 85 (5th Cir.1976).

The parties agree that even where the Unser extension does not encroach within the Monument, the road "uses" the Monument because of the visual impact and the noise from the road. *See id.; Ringsred v. Dole,* 828 F.2d 1300, 1303 (8th Cir.1987). Also, Plaintiffs (and Amici) apparently concede that "there is no feasible and prudent alternative" to using the Monument to some extent. In other words, they do not contend that the concerns justifying the road can be accommodated by some alternative to a road that uses the Monument. Thus, the first hurdle is not at issue.

The point of contention between the parties is whether the Project "includes all possible planning to preserve and protect and to minimize harm" to the Monument resulting from the use of the Monument. The federal courts have interpreted this requirement as forbidding the selection of one route when an alternative would cause less harm. On the other hand, if the harm caused by the chosen design would be "substantially equal" to that from any alternative design, then the chosen design is acceptable. *See Louisiana Envtl. Soc'y,* 537 F.2d at 86; *Ringsred,* 828 F.2d at 1303; *Druid Hills Civic Ass'n v. Federal Highway Admin.,* 772 F.2d 700, 716 (11th Cir.1985); *Coalition on Sensible Transp. v. Dole,* 826 F.2d 60, 65 (D.C.Cir.1987). Consequently, Plaintiffs could prevail on their motion for a preliminary injunction only if they could show that there was an alternative design for the Project that would not cause substantially equal damage to the Monument.[1]

The essence of Plaintiffs' attack on the Project is that it provides for "an excessively wide design" which "will substantially interfere with visitors' ability to enjoy and appreciate" the Monument because of "the visual intrusion of a paved scar along the edge of

---

1. If Plaintiffs could make such a showing, the Project might still satisfy the Act if the less damaging alternative is infeasible or imprudent. *See*

*Louisiana Envtl. Soc'y,* 537 F.2d at 86. But we need not reach that issue.

the Monument, and the noise resulting from the close proximity of heavy traffic." Plaintiffs suggested ways to reduce the width of the road, including elimination of double left-turn lanes and extra right-turn lanes at the St. Joseph's intersection, and reduction of the width of the median, shoulders, and travel lanes at what it termed "particularly sensitive locations." In response to criticism of the width, the City prior to suit had altered one 200–foot segment by reducing the median from 30 feet to 25 feet and the shoulder from 8 feet to 6 feet.

Yet, a narrower design would have its own shortcomings. The 8–foot median proposed by Plaintiffs' expert required a concrete barrier separating the opposing lanes of traffic, whereas the City's 30–foot median had no barrier and was landscaped with trees. Also, the City's plan provided for bike paths, which were not present in the alternative proposed by Plaintiffs.

Of particular significance was the absence of any expert testimony from Plaintiffs' witnesses on the actual difference in the impact on the Monument from a narrower design that would move the roadway about 35 feet further away from the 3000–acre Monument. Plaintiffs offered no studies or expert opinion on any difference with respect to noise, visibility, or the impact of dust or smoke. There was no evidence that the petroglyphs themselves would be affected. Although stating his understanding that the National Park Service had accepted the City's design, the SHPO testified in essence that his objection was based on the proposition that "further away is less harmful, narrower is less harmful."

On the record before the district court it was not irrational for the court to reject Plaintiffs' factual contentions. The district court could rationally determine that Plaintiffs had failed to establish that the impact on the Monument from the City's design was not substantially equal to the impact from Plaintiffs' proposed alternatives. *See Coalition on Sensible Transp.,* 826 F.2d at 65–66 (Secretary did not have to select alternative that saved .5 acres of one park site but lost .1 acre from another site; court should not "fly speck" Section 4(f) determinations for technical deficiencies); *PIRG v. Brinegar,* 517 F.2d 917 (6th Cir.1975) (affirming denial of preliminary injunction). Indeed, the court could even have doubted that the alternatives were as good as the City's design in its impact on the Monument. Consequently, the district court did not abuse its discretion in denying the motion for preliminary injunction.

Although the district court's order does not explicitly use the "substantially equal" language that appears in federal case authority, we find satisfactory the order's language that the City "has done enough under the plain language of the Preservation Act to preserve and to protect the Petroglyph National Monument." We understand the quoted language to be a paraphrase of the statutory requirement that the "project includes all possible planning to preserve and protect and to minimize harm to the significant prehistoric or historic site resulting from such use." Section 18–8–7. Thus, we reject the contention of Plaintiffs and Amici that the district court applied an incorrect legal standard in ruling on the merits of the motion for preliminary injunction.

Finally, we note that the trial on the merits was not advanced and consolidated with the hearing on Plaintiffs' motion for a preliminary injunction. *See* SCRA 1986, 1–066(A)(2). The order denying the motion therefore does not deprive Plaintiffs of their right to a trial on the merits of their complaint for declaratory relief and a permanent injunction under the Act. *See Cook v. Klopfer,* 86 N.M. 111, 520 P.2d 267 (1974).

## III. CONCLUSION

For the above reasons we reverse the district court's determination that Plaintiffs did not have standing, affirm the district court's denial of the motion for a preliminary injunction, and remand for further proceedings consistent with this opinion with respect to Plaintiffs' claims for declaratory and injunctive relief under the New Mexico Prehistoric and Historic Sites Preservation Act.

**IT IS SO ORDERED.**

MINZNER, C.J., and ALARID, J., concur.