## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2011-NMSC-011**

**Filing Date: March 8, 2011**

**Docket No.  32,139**

**SAN JUAN AGRICULTURAL WATER
USERS ASSOCIATION, ELECTORS
CONCERNED ABOUT ANIMAS WATER,
AND STEVE CONE**,

       **Plaintiffs-Petitioners,**

**v.**

**KNME-TV, BOARD OF EDUCATION OF
THE ALBUQUERQUE PUBLIC SCHOOLS,
BOARD OF REGENTS OF THE UNIVERSITY
OF NEW MEXICO, JOHN D'ANTONIO,
NEW MEXICO INTERSTATE STREAM
COMMISSION, AND OFFICE OF THE
GOVERNOR OF NEW MEXICO**,

       **Defendants-Respondents.**

**ORIGINAL PROCEEDING ON CERTIORARI
Nan G. Nash, District Judge**

Victor R. Marshall & Associates, P.C.
Victor R. Marshall
Albuquerque, NM

for Petitioners

Long, Pound & Komer, P.A.
Mark Travis Baker
Santa Fe, NM

for Respondents

Peifer, Hanson & Mullins, P.A.
Charles R. Peifer

1

Matthew R. Hoyt
Elizabeth K. Radosevich
Albuquerque, NM

for Amicus Curiae
New Mexico Foundation for Open Government

**OPINION**

**DANIELS, Chief Justice.**

**{1}**    The New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2009), provides in Section 14-2-12(A)(2) that a person may bring an enforcement suit if that person's written request to inspect public records has been denied.  In this case, we hold that a person may bring suit to enforce a public records request made through an agent, even if the agent did not disclose that the initial request was being made on behalf of another.  We also hold that a person who has not requested public records, either personally or through an agent, does not have standing to seek judicial enforcement.

## I.  BACKGROUND

**{2}**    Victor R. Marshall & Associates, P.C. (Marshall law firm) submitted written IPRA requests to inspect public records to multiple public agencies, including KNME-TV, the Board of Regents of the University of New Mexico (UNM), John D'Antonio of the Office of the State Engineer (State Engineer), the Interstate Stream Commission (Stream Commission), and the Office of the Governor of New Mexico.  The Marshall law firm included its own name, address, and phone number on the requests, and none of the requests disclosed the fact that the request was being made on behalf of the Marshall law firm's client, the San Juan Agricultural Water Users Association (San Juan Association).  In the written requests, the Marshall law firm asked each public entity to provide all public records relating to a documentary program, *The Water Haulers*, that aired on KNME-TV in January 2007 and discussed a proposed water rights settlement affecting the San Juan River Basin.  Although the State Engineer, Stream Commission, Office of the Governor, and UNM each produced some records related to *The Water Haulers*, Plaintiffs contend that the production of documents was incomplete.

**{3}**    In order to compel Defendants to produce the remainder of the requested records, the San Juan Association and two additional plaintiffs, Electors Concerned About Animas Water (Electors) and Steve Cone, brought a Section 14-2-12(A)(2) IPRA enforcement suit against Defendants.  Electors, an environmental organization, and Cone, a teacher and environmental activist, represent that they joined the lawsuit because they asserted an interest in compelling full production of the documents relating to *The Water Haulers*, even though the Marshall law firm had not been acting as attorney or agent for Electors or Cone

2

when the firm requested the records.

**{4}** Defendants moved to dismiss the case pursuant to Rule 1-012(B)(1) and (6) NMRA. They argued that Plaintiffs did not have a cause of action because "IPRA only creates rights in the person who actually requests public records and expressly limits the power to enforce its provisions to the requester, the attorney general, and district attorneys." Attorney Victor Marshall responded with an affidavit stating that the Marshall law firm had been acting as attorney and agent for its client, the San Juan Association, when it submitted the records requests to Defendants. Defendants do not challenge Victor Marshall's assertion that the Marshall law firm had requested the records on behalf of the San Juan Association.

**{5}** The Second Judicial District Court granted the motion to dismiss Plaintiffs' complaint. The district court found that Electors and Cone did not have standing to sue because IPRA gives judicial enforcement remedies only to the attorney general, a district attorney, or "a person whose written request has been denied." *See* § 14-2-12(A). The district court also concluded that the San Juan Association did not have standing to enforce a records request made through an agent because Section 14-2-8(C) requires all records requests to include "the name, address and telephone number of the person seeking access to the records." Although the district court found that the Marshall law firm had been representing the San Juan Association when the firm made the records request, the court concluded that the San Juan Association did not have a cause of action under IPRA because the request did not disclose the San Juan Association's name, address, and phone number and because the Marshall law firm had not disclosed in the initial request that it was made on behalf of the San Juan Association.

**{6}** Plaintiffs appealed, arguing that neither IPRA nor the common law of agency requires a requesting agent to disclose its principal. *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2010-NMCA-012, ¶ 5, 147 N.M. 643, 227 P.3d 612. Defendants argued that the district court's ruling should be upheld because it was supported by both the plain language of IPRA and the body of federal case law interpreting the federal Freedom of Information Act (FOIA), 5 U.S.C.A. § 552 (Thomson Reuters, Westlaw 2011). *San Juan Agric. Water Users Ass'n*, 2010-NMCA-012, ¶ 9. The Court of Appeals upheld the district court. *Id.* ¶ 1.

**{7}** We granted certiorari to consider two issues raised by Plaintiffs. One of those issues, whether the district court improperly refused to allow Plaintiffs to amend their enforcement complaint by adding the Marshall law firm as a named plaintiff, is patently devoid of merit and needs no extended discussion. The record reflects that no such motion to amend was ever made, either prior to or after entry of judgment, and we therefore affirm the Court of Appeals on that issue. *See id.* ¶¶ 33-37. We now address Plaintiffs' other issue, whether an undisclosed principal has standing to enforce an IPRA request made by that principal's agent.

## II. DISCUSSION

3

**{8}**     When evaluating standing to sue under a statutory cause of action, "we must look to the Legislature's intent as expressed in the Act or other relevant authority." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, 121 N.M. 764, 768, 918 P.2d 350, 354.  Where the Legislature has granted specific persons a cause of action by statute, the statute governs who has standing to sue.  *ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 9 n.1, 144 N.M. 471, 188 P.3d 1222; *see also Key*, 121 N.M. at 768, 918 P.2d at 354 (explaining that there is no "significant difference between having standing to sue and having a cause of action").  Whether Plaintiffs have standing is a question of law that we review de novo.  *See ACLU of N.M.*, 2008-NMSC-045, ¶ 6.

**{9}**     To determine whether Plaintiffs have standing to enforce the records request made by the Marshall law firm, we must begin with the language of IPRA.  *See Key*, 121 N.M. at 768-69, 918 P.2d at 354-55.  "The entire statute is to be read as a whole so that each provision may be considered in its relation to every other part."  *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 794, 568 P.2d 1236, 1240 (1977).  We begin our discussion with an overview of the IPRA provisions relevant to our resolution of this case.

## A.  IPRA Was Enacted to Ensure Public Access to Public Documents.

**{10}**     Under IPRA, "[e]very person has a right to inspect" the public records of New Mexico.  Section 14-2-1(A).  IPRA defines "person" broadly to include "any individual, corporation, partnership, firm, association or entity."  Section 14-2-6(C).  In order to facilitate the public's right to inspect records, each public body of New Mexico must have a designated custodian to receive and respond to records requests and provide opportunities for inspection.  Section 14-2-7; *see* § 14-2-6(D) (defining "public body").  "Any person wishing to inspect public records may submit an oral or written request to the custodian."  Section 14-2-8(A).  Written requests must describe the records that are sought and must include the name, address, and telephone number "of the person seeking access to the records," but "[n]o person requesting records shall be required to state the reason for inspecting the records."  Section 14-2-8(C).

**{11}**     The records custodian "shall permit the inspection immediately or as soon as is practicable under the circumstances, but not later than fifteen days after receiving a written request."  Section 14-2-8(D).  If the records are not available "within three business days, the custodian shall explain in writing when the records will be available for inspection or when the public body will respond to the request."  *Id.*  Within fifteen days of receiving a written request, the custodian must either permit inspection of the records, provide a written explanation of why any request has been denied,[1] or in the case of an excessively burdensome or broad request, inform the requester that additional time will be needed to respond.  *See* §§ 14-2-10 to -11.  If the custodian has not responded to a written request

---

[1]IPRA exempts certain types of records from inspection.  *See* § 14-2-1(A)(1)-(12). We do not address whether any of the records requested in this case fall into an exception.

within fifteen days, the "person requesting the public records" may conclude that the request has been denied. Section 14-2-11(A).

**{12}** IPRA includes remedies to encourage compliance and facilitate enforcement. The attorney general and district attorneys are empowered to enforce IPRA, Section 14-2-12(A)(1), and the statute also provides that a "person whose written request has been denied" may bring an enforcement suit, Section 14-2-12(A)(2). By giving enforcement power to any person whose written request has been denied, IPRA's provisions create "'private attorneys general'" for "more effective and efficient enforcement" of IPRA than would be possible if only the attorney general or district attorney could enforce the statute. Office of the New Mexico Attorney General, *Inspection of Public Records Act Compliance Guide* 41 (6th ed. 2009) (IPRA Compliance Guide).

**{13}** A plaintiff who prevails in an IPRA enforcement suit can obtain attorneys' fees, costs, and damages. Section 14-2-12(D). If a records custodian fails to respond to a records request within fifteen days of receiving the request and a court concludes that the failure to respond was unreasonable, the court shall award the plaintiff damages not to exceed one hundred dollars a day. Section 14-2-11(C)(1)-(2). In such cases, damages "accrue from the day the public body is in noncompliance until a written denial is issued" and shall "be payable from the funds of the public body." Section 14-2-11(C)(3)-(4). IPRA's damage provisions are intended to encourage public entities' prompt compliance with records requests. *See Derringer v. State*, 2003-NMCA-073, ¶¶ 11, 15, 133 N.M. 721, 68 P.3d 961 (determining that "the legislature's focus was to provide prompt compliance" and holding that IPRA "does not provide for damages pursuant to an action brought after a public body has complied with the Act").

**{14}** We must construe IPRA in light of its purpose. "A statute should be interpreted to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it." *Newsome*, 90 N.M. at 794, 568 P.2d at 1240. The Legislature expressly stated IPRA's purpose and underlying public policy in Section 14-2-5:

> Recognizing that a representative government is dependent upon an informed electorate, the intent of the legislature in enacting [IPRA] is to ensure, and it is declared to be the public policy of this state, that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees. It is the further intent of the legislature, and it is declared to be the public policy of this state, that to provide persons with such information is an essential function of a representative government and an integral part of the routine duties of public officers and employees.

**{15}** IPRA's stated policy reflects the fact that people in our democratic society have "a fundamental right" to inspect public records. *Newsome*, 90 N.M. at 797, 568 P.2d at 1243. Open records laws such as IPRA are based on the premise that public access to public

records will result in better government.  *See* IPRA Compliance Guide, *supra*, at 26.  IPRA creates a presumption in favor of access:  "The citizen's right to know is the rule and secrecy is the exception.  Where there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed."  *Newsome*, 90 N.M. at 797, 568 P.2d at 1243.

**{16}**    IPRA is intended to ensure that the public servants of New Mexico remain accountable to the people they serve.  "Writings coming into the hands of public officers in connection with their official functions should generally be accessible to members of the public . . . to determine whether those who have been entrusted with the affairs of government are honestly, faithfully and competently performing their function."  *Id.* at 795, 568 P.2d at 1241 (internal quotation marks and citation omitted).  In order for government to truly be of the people and by the people, and not just for the people, our citizens must be able to know what their own public servants are doing in their name.

**B.  Common-Law Principles of Agency Apply Unless Explicitly Abrogated.**

**{17}**    When a statute's plain language "is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation."  *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted).  This case illustrates how "a statute, apparently clear and unambiguous on its face may for one reason or another give rise to legitimate . . . differences of opinion concerning the statute's meaning."  *Key*, 121 N.M. at 769, 918 P.2d at 355 (internal quotation marks and citation omitted).

**{18}**    Defendants argue that only a person identified by name, address, and telephone number in a written records request can enforce the act because IPRA (1) states that a written records request must include "the name, address and telephone number of the person seeking access to the records," Section 14-2-8(C), and (2) provides that "a person whose written request has been denied" can enforce the act, Section 14-2-12(A)(2).  The statutory language does not explicitly address the issue before us, whether a person can request records or enforce the request through an agent.

**{19}**    Plaintiffs, joined by amicus curiae New Mexico Foundation for Open Government (NMFOG), argue that the common law of agency applies and that a request made by an attorney on behalf of a client is the legal equivalent of a request made by the client personally.  If a request made by an attorney on behalf of a client is denied, the client would be a "person whose written request has been denied" within the meaning of Section 14-2-12(A)(2) and would therefore have standing to bring an enforcement suit.

**{20}**    When this Court interprets statutes, we do so against a background of common-law principles.  In 1876, New Mexico's territorial Legislature determined that "the common law as recognized in the United States of America shall be the rule of practice and decision."  1875-1876 N.M. Laws, ch. 2, § 2; *see* NMSA 1978, § 38-1-3 (1876) (current version of the

6

statute).  "[T]he common law, upon its adoption, came in and filled every crevice, nook and corner in our jurisprudence where it had not been stayed or supplanted by statutory enactment . . . ."  *Sims v. Sims*, 1996-NMSC-078, ¶ 23, 122 N.M. 618, 930 P.2d 153 (internal quotation marks and citation omitted).  We presume that the Legislature enacts statutes that are consistent with the common law and that the common law applies unless it is clearly abrogated.  *Id.* ¶ 24.  "A statute will be interpreted as supplanting the common law only if there is an explicit indication that the legislature so intended."  *Id.* ¶ 22.

**{21}**    The legal principles governing the relationship between an agent and a principal are part of the common-law perspective from which IPRA must be viewed.  "An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation."  UJI 13-401 NMRA.  "Generally, a person may appoint an agent to do the same acts and to achieve the same legal consequences by the performance of an act as if he or she had acted personally, unless public policy or the agreement with the principal requires personal performance."  3 Am. Jur. 2d *Agency* § 18, at 442 (2002).  "Unquestionably, insofar as an agent's acts are within [the agent's] authority they are in legal contemplation the acts of the principal."  *Ronald A. Coco, Inc. v. St. Paul's Methodist Church of Las Cruces, N.M., Inc.*, 78 N.M. 97, 99, 428 P.2d 636, 638 (1967).

**{22}**    The common law of agency does not require an agent to disclose that he or she is acting on behalf of someone else.  *See* 3 Am. Jur. 2d *Agency* § 305, at 674; *see, e.g.*, *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003) ("An agent need not disclose his or her principal's identity in order to act on behalf of that principal.").

**{23}**    Where an agent makes a contract on behalf of an undisclosed principal, the third party's liability to the principal is generally the same as the third party's liability to the agent.  *See* William A. Gregory, *The Law of Agency and Partnership* § 105, at 192 (3d ed. 2001).  An undisclosed principal can sue and be sued on a contract made in the agent's name because the common law of agency regards the agent's actions as the principal's own.  *See id.*  The undisclosed "principal may at any time appear as such and claim all the benefits of the contract from the other contracting party, so far as the principal can do so without injury to the other party by the substitution of himself or herself for the agent."  3 Am. Jur. 2d *Agency* § 316, at 684.  Apart from some limited exceptions not relevant here, courts have unanimously held that an undisclosed principal becomes a party to transactions entered into by the principal's agent.  *See Dana v. Boren*, 135 P.3d 963, 965 (Wash. Ct. App. 2006) (listing exceptions); 2 Restatement (Third) of Agency § 6.03 cmt. d, at 43-45 (2006) (discussing exceptions); Gregory, *supra*, § 95, at 180 (noting that this rule is universal).

**{24}**    The application of agency law is not limited to contracts but instead "encompasses a wide and diverse range of relationships and circumstances."  1 Restatement (Third) Agency § 1.01 cmt. c, at 19.  In New Mexico as elsewhere, the common law of agency allows an agent to do on behalf of the principal whatever the principal would be able to do.

*See Turley v. State*, 96 N.M. 579, 581, 633 P.2d 687, 689 (1981) ("It is an elementary principle of law that a person may do anything through an agent that he may lawfully do personally, unless public policy or some agreement requires personal performance."), *overruled on other grounds by U.S. Brewers Ass'n, Inc. v. Dir. of the N.M. Dep't of Alcoholic Beverage Control*, 100 N.M. 216, 219, 668 P.2d 1093, 1096 (1983).

**{25}** A person may use an agent to take action under the authority of a statute, even when the agent is not the person specifically identified in the statute. *Coldwater Cattle Co. v. Portales Valley Project, Inc.*, 78 N.M. 41, 45, 428 P.2d 15, 19 (1967). "In order to determine that a right conferred by statute shall only be exercised personally and cannot be delegated to an agent something must be found in the Act by express enactment or necessary implication which prevents an agent from acting." *Id.*

**{26}** In *Coldwater Cattle*, the nonprofit corporation Portales Valley Project filed 197 applications with the state engineer on behalf of multiple water rights owners seeking to drill supplemental wells and change the points of diversion for the water rights. *Id.* at 43, 428 P.2d at 17. New Mexico's water code provided that "[t]he owner of a water right may drill and use a supplemental well" and may "change the location of [a] well," but these acts could be done "only upon application to the state engineer." *Id.* at 44-45, 428 P.2d at 18-19 (internal quotation marks and citation omitted). The Coldwater Cattle Company challenged the applications, arguing that under the plain language of the water code the only person who could file an application with the state engineer was the owner of a water right and that "an agent is excluded from performing any of the required acts" under the statute. *Id.* at 45, 428 P.2d at 19.

**{27}** This Court looked to legislative intent to determine whether a water rights owner could file an application through an agent. *Id.* The water code provisions at issue were intended "to provide a procedure for determining whether proposed changes [to a water right] injuriously affect the rights of others, not to limit the right of water right owners . . . to act only in person and not through a designated agency." *Id.* (internal citation omitted). Because the water code did not "expressly or impliedly prevent an agent of the owners of water rights from filing and prosecuting applications . . . [o]n behalf of the owners," this Court held that the water rights owners could "delegate the function of filing and prosecuting such applications." *Id.*; *see also Turley*, 96 N.M. at 581, 633 P.2d at 689 (holding that the use of an agent was permissible under a statute because the statute did not state or imply that the use of an agent was prohibited).

**{28}** We therefore must consider whether there is anything in IPRA that reflects a legislative intent to abrogate common law agency principles.

**C. IPRA Does Not Preclude Enforcing a Records Request Made Through an Agent.**

**{29}** As in *Coldwater Cattle*, we must look to the language of the statutory provisions at issue and interpret them in light of their purpose in order to determine whether IPRA

8

precludes an undisclosed principal from delegating the function of requesting records to an agent and then later enforcing that request in the principal's own name. Defendants argue that Section 14-2-8(C), stating that all written requests "shall provide the name, address and telephone number of the person seeking access to the records," expresses legislative intent to limit standing to bring an enforcement suit under IPRA only to the person who is specifically named in the request. Defendants assert that Section 14-2-8(C) gives public entities the right to have notice of who the litigants might be should the public body deny the request. We disagree.

**{30}** An IPRA request must include a name, address, and telephone number in order to facilitate the inspection procedures set forth in IPRA. In order to comply with IPRA's procedural provisions, a records custodian must have contact information that will enable the custodian to seek clarification of a records request, furnish public records for inspection, send written explanations of why any request has been denied, or inform the requester that more time is needed to respond to a burdensome request. *See, e.g.*, § 14-2-8(D) ("If the inspection is not permitted within three business days, the custodian shall explain in writing when the records will be available . . . ."); § 14-2-11(B) ("[T]he custodian shall provide the requester with a written explanation of the denial."). A records custodian cannot perform the statutory duties set forth in IPRA unless the custodian has someone with whom to communicate. A request's provision of a name, address, and telephone number is essential to the inspection process.

**{31}** Section 14-2-8(C) has an administrative function; it was not intended to give public bodies notice of who the litigants might be should the public body decide to deny the request. The purpose and intent of IPRA is to provide "all persons" with "the greatest possible information regarding the affairs of government." Section 14-2-5. In order to further this goal, IPRA makes it clear that all public entities must furnish records without regard to who is requesting the records and cannot require disclosure of the reason for inspecting the records. Section 14-2-8(C).

**{32}** Requiring a person to state the reason for a request, either directly or by implication, could have a chilling effect on the free flow of information and potentially compromise the public entity's prompt compliance with the request. Amicus NMFOG argues that in many situations a person seeking records may deem the use of an agent necessary because disclosing the identity of the principal would automatically reveal the purpose of the request, which IPRA protects from disclosure. For example, an agency may have an incentive to treat the news media differently from other requesters. An agency may hesitate before providing information to an advocacy organization because of an assumed motivation behind the request. A whistleblower or candidate for public office may wish to request records through an agent to avoid revealing the reason for the request.

**{33}** Defendants argue that such hypothetical situations are speculative and improperly assume that public entities will act in bad faith. While we hope that all public servants will act in good faith in complying with their statutory obligations under IPRA, "New Mexico's

9

policy of open government is intended to protect the public from having to rely solely on the representations of public officials that they have acted appropriately." *City of Farmington v. The Daily Times*, 2009-NMCA-057, ¶ 17, 146 N.M. 349, 210 P.3d 246. The very fact that IPRA provides a remedy for wrongful withholding of public documents reflects a legislative expectation that there will be occasions when public officials will fail to follow the law.

**{34}** It is also reasonable to expect many instances when parties will request records through agents who may not be available to participate in IPRA enforcement suits. Foreseeable requesting parties include litigants who request records for litigation through attorneys who may not represent them in the IPRA suit, news organizations that make requests through employees who may no longer be employed when the IPRA suit is filed, political parties or public interest organizations who make requests through employees or volunteers who are not available for the IPRA suit, and any organization that can act only through human agents who are mobile and mortal by nature. There is no sound justification for requiring those principals to start the requesting process all over again, with likely identical results, each time an agent becomes unavailable.

**{35}** Courts in other states have concluded that under their statutes a principal has standing to enforce a records request made through an agent. *See Norton v. Town of Islip*, 17 A.D.3d 468, 470 (N.Y. App. Div. 2005) ("[A]ny person on whose behalf a [public records] request was made has standing to maintain a proceeding to review the denial of disclosure of the records requested."); *Kleven v. City of Des Moines*, 44 P.3d 887, 888-89 (Wash. Ct. App. 2002) (holding that an undisclosed client could sue for relief under Washington's public disclosure act to enforce a records request made through the client's attorney); *cf. State ex rel. Hansen v. Schall*, 12 A.2d 767, 770 (Conn. 1940) (concluding that a town inhabitant with the right to inspect that town's records could employ a noninhabitant agent to acquire the information on the inhabitant's behalf).

**{36}** The purpose of IPRA is to encourage disclosure of public documents. Allowing an undisclosed principal to enforce a records request made through an agent furthers this purpose without creating any prejudice to the public entity holding the records. Public bodies have a statutory duty to respond diligently to all records requests, regardless of who makes the request. As with the statutes at issue in *Turley* and *Coldwater Cattle*, we find nothing in the text or legislative history of IPRA indicating that the Legislature intended to supplant the common law of agency. *See Sims*, 1996-NMSC-078, ¶ 23. Under the common law of agency, a public records request made by an agent on behalf of an undisclosed principal is therefore the legal equivalent of a public records request made by the principal in the principal's own name.

**D. Federal FOIA Interpretations Do Not Control Interpretation of IPRA.**

**{37}** Defendants argue that we should interpret IPRA consistently with federal caselaw interpretations of FOIA. Federal courts have held that an individual must be specifically named in a FOIA request in order to bring suit under that statute. *See, e.g.*, *McDonnell v.*

10

*United States*, 4 F.3d 1227, 1238 (3d Cir. 1993) ("A 'case or controversy' conferring standing arises only when a person makes a request for information under the FOIA and the petitioned agency denies that request."); *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1290-91 (D.C. Cir. 1998) (explaining that the attorney, and not his undisclosed client, was the real party in interest in the FOIA suit and the only one with standing to sue).

**{38}**    There are several reasons why we must decline to follow federal FOIA caselaw when interpreting IPRA. The text of IPRA is significantly different from the text of FOIA. For example, FOIA lacks (1) the unequivocal statement of public policy found in IPRA, Section 14-2-5, (2) the rule that a public entity cannot ask a person requesting records the reason for the request, Section 14-2-8(C), and (3) the provision for damages when a records custodian fails to respond to a request in a timely fashion, Section 14-2-11(C). These IPRA provisions underscore a legislative intent to ensure that New Mexicans have the greatest possible access to their public records. The differences in substantive text and legislative purposes make the application of federal FOIA law inappropriate when construing IPRA. *See Phelps Dodge Tyrone, Inc. v. N.M. Water Quality Control Comm'n*, 2006-NMCA-115, ¶ 37, 140 N.M. 464, 143 P.3d 502 ("[T]here may be reasons, such as differences in statutory language, that may make federal law or law from other jurisdictions inapplicable or inappropriate in New Mexico . . . ."); *see, e.g.*, *State v. Badoni*, 2003-NMCA-009, ¶ 16, 133 N.M. 257, 62 P.3d 348 ("[F]undamental differences between federal and New Mexico's rules of pleading make federal case law on the issue of notification distinguishable . . . ."); *cf. State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶¶ 14-16, 130 N.M. 386, 25 P.3d 225 (noting that New Mexico may wish to diverge from federal precedent because of "a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics" (internal quotation marks and citation omitted)).

**{39}**    Federal courts interpret FOIA within a legal framework different from that found in our state court jurisprudence. When evaluating standing, federal courts are constrained by the limited federal jurisdiction delegated to them under Article III of the United States Constitution. *See* U.S. Const. art. III, § 2, cl. 1; *see, e.g.*, *Mahtesian v. U.S. Office of Pers. Mgmt.*, 388 F. Supp. 2d 1047, 1050 (N.D. Cal. 2005) ("[S]tanding to sue is an essential and unchanging part of the case or controversy requirement of Article III." (internal quotation marks and citation omitted)); *Nat'l Trust for Historic Preservation v. City of Albuquerque*, 117 N.M. 590, 593, 874 P.2d 798, 801 (Ct. App. 1994) ("Federal courts have very limited authority beyond that conferred by statute or the Constitution."). Unlike the federal courts, "New Mexico state courts are not subject to the jurisdictional limitations imposed on federal courts by Article III, Section 2 of the United States Constitution." *ACLU of N.M.*, 2008-NMSC-045, ¶ 9 (internal quotation marks and citation omitted).

**{40}**    A significant difference between federal and state courts is that, unlike state courts, federal courts do not presume that Congress intended for the common law to apply when interpreting a statute. *See Sims*, 1996-NMSC-078, ¶¶ 22-24 (discussing the state presumption). Federal courts use federal common law in only a few restricted contexts, such as "those concerned with the rights and obligations of the United States, interstate and

11

international disputes implicating the conflicting rights of States, or our relations with foreign nations, and admiralty cases." *Nat'l Trust for Historic Preservation*, 117 N.M. at 593, 874 P.2d at 801 (quoting *Texas Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, 641 (1981)). "[A] state court, because it possesses common-law authority, has significantly greater power than a federal court to recognize a cause of action not explicitly expressed in a statute" and may do so in order to further public policy. *Id.* at 593-94, 874 P.2d at 801-02.

**{41}** A number of other jurisdictions have also declined to follow federal caselaw when interpreting their own state public records statutes. *See, e.g.*, *Graham v. Ala. State Emps. Ass'n*, 991 So. 2d 710, 720 (Ala. Civ. App. 2007) (finding no basis to apply FOIA caselaw when construing the Alabama statute); *Bowers v. Shelton*, 453 S.E.2d 741, 743 (Ga. 1995) ("Because the Georgia Act materially differs from the FOIA, [caselaw interpreting FOIA] is inapplicable."); *Magic Valley Newspapers, Inc. v. Magic Valley Reg'l Med. Ctr.*, 59 P.3d 314, 316-17 (Idaho 2002) (finding that FOIA did not apply to a case brought under the Idaho statute); *State ex rel. Thomas v. Ohio State Univ.*, 643 N.E.2d 126, 129 (Ohio 1994) (rejecting FOIA's privacy-public interest balancing test for the Ohio Public Records Act because FOIA did not apply, and the Ohio law contained no similar personal-privacy exception); *Kleven*, 44 P.3d at 890 (refusing to apply FOIA caselaw to interpret Washington's public disclosure law because the state law provisions differed significantly from the federal law provisions). We agree with the jurisdictions that have rejected federal FOIA interpretations in interpreting their own statutes guaranteeing public access to public records. Both recognized principles of common law and the remedial purposes of our statute lead us to conclude that a previously unnamed principal may enforce IPRA rights, either directly in its own name or through its agent.

**E.  Neither Electors nor Cone Have Standing to Enforce San Juan Association's Records Request.**

**{42}** New Mexico courts generally expect a litigant to demonstrate the traditional standing requirements of "injury in fact, causation, and redressability to invoke the court's authority to decide the merits of the case." *ACLU of N.M.*, 2008-NMSC-045, ¶ 10. Because all persons are entitled to inspect the public records of New Mexico, Section 14-2-5, a person who follows IPRA's procedure for requesting records and whose request is wrongfully denied or ignored suffers a cognizable injury in fact. This injury is caused by the public entity's failure to provide the records through a records custodian as required by law. *See* § 14-2-7. This injury can be redressed through an IPRA enforcement suit under Section 14-2-12(A)(2), which provides in relevant part that "[a]n action to enforce [IPRA] may be brought by . . . a person whose written request has been denied." The traditional standing requirements of injury, causation, and redressability are met by any person whose request to inspect public records has been denied.

**{43}** The San Juan Association has standing to enforce the public records request it made through its agent, the Marshall law firm. "Whether an agent acts on behalf of an undisclosed principal is a question of fact." 2 Restatement (Third) of Agency § 6.03 cmt. c, at 42; *see,*

12

*e.g.*, *DeBaca, Inc. v. Montoya*, 91 N.M. 419, 420-21, 575 P.2d 603, 604-05 (1978) (explaining that evidence was admissible to show that an agent had acted on behalf of an undisclosed principal). In order to have standing, a plaintiff bears the burden of showing that there was an agency relationship. *See Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 26, 131 N.M. 772, 42 P.3d 1221. In this case, Victor Marshall submitted an uncontroverted affidavit stating that the Marshall law firm had been acting as agent for the San Juan Association when the firm made the request to inspect public records. The district court concluded that the Marshall law firm was acting as agent for its client, the San Juan Association, when the firm requested the public records.

**{44}** Unlike the San Juan Association, Electors and Cone cannot meet the standing requirements of injury, causation, and redressability. It is the act of requesting access to public records and the subsequent denial of that request that enables a plaintiff to establish injury and distinguishes the plaintiff from the general public. Neither Electors nor Cone were persons "whose written request has been denied," as required by Section 14-2-12(A)(2). *See City of Newark v. Law Dep't of City of N.Y.*, 305 A.D.2d 28, 34-35 (N.Y. App. Div. 2003) (finding that petitioners lacked standing under New York's freedom of information law because the records request was not made on their behalf). Accordingly, Electors and Cone do not have standing to bring an enforcement suit under IPRA.

## III. CONCLUSION

**{45}** We hold that a principal, whether disclosed or not, can delegate the function of requesting public records to an agent, such as the principal's attorney, and that either the agent or the principal, even if previously unknown to the public records custodian, can enforce that request if it is denied. We therefore reverse the judgment of the district court dismissing the claims of the San Juan Association, affirm the dismissal as to Electors and Cone, and remand to the district court for further proceedings consistent with this opinion.

**{46}   IT IS SO ORDERED.**

_____

**CHARLES W. DANIELS, Chief Justice**

**WE CONCUR**:

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

13

_____

**EDWARD L. CHÁVEZ, Justice**

**Topic Index for** *San Juan Agricultural Water Users Association v. KNME-TV*, **Docket No. 32,139**

| | |
|---|---|
| **AY** | **AGENCY** |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-CS | Causes of Action |
| CP-SD | Standing |
| | |
| **GV** | **GOVERNMENT** |
| GV-PR | Public Records |
| | |
| **MS** | **MISCELLANEOUS STATUTES** |
| MS-IP | Inspection of Public Records Act |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |