# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-014**

**Filing Date: September 16, 2019**

**No. A-1-CA-35951**

**NEW MEXICO FOUNDATION
FOR OPEN GOVERNMENT; THE
ALBUQUERQUE JOURNAL; and
THE SANTA FE NEW MEXICAN,**

      Petitioners-Appellees,

v.

**CORIZON HEALTH, a foreign
corporation,**

      Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge**

Certiorari Denied, December 16, 2019, No. S-1-SC-37951.  Released for Publication
April 7, 2020.

Daniel Yohalem
Santa Fe, NM

Katherine Murray
Santa Fe, NM

for Appellees

Holland & Hart LLP
Larry J. Montaño
Charlie S. Baser
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Judge.**

**{1}**     Corizon Health (Respondent) appeals the district court's orders granting Petitioners' the Santa Fe New Mexican, Albuquerque Journal, and New Mexico Foundation for Open Government (collectively, Petitioners) verified petition for alternative writ of mandamus (Petition); and ensuing motion for attorney fees. Concluding the district court properly determined that Respondent's settlement agreement documents were public records subject to the Inspection of Public Records Act (IPRA) and acted within its discretion in awarding attorney fees to Petitioners, we affirm.

## BACKGROUND

**{2}**     Respondent is a private prison medical services provider that provides contracted healthcare services throughout the United States. In a series of contracts with the New Mexico Corrections Department (NMCD), Respondent committed to provide healthcare services in certain New Mexico correctional and detention centers from 2007 to 2016, most recently under a Professional Services Agreement (the Contract) from June 2012 through May 2016. Respondent stopped providing medical care services for NMCD after the Contract ended. As a result of the medical care Respondent provided during the course of the Contract, certain inmates filed civil claims against Respondent alleging instances of improper care and/or sexual assault. Respondent negotiated and settled at least fifty-nine such civil claims.

### IPRA Requests

**{3}**     In May and June 2016 Petitioners separately submitted written IPRA requests to NMCD requesting to inspect and copy all settlement documents involving Respondent in its role as medical services contractor for NMCD. NMCD responded to each and stated it had no responsive documents in its possession. NMCD explained that under the Contract, Respondent defends and indemnifies NMCD regarding "all lawsuits alleging improper or unconstitutional medical care" of inmates, and that even if NMCD or a state employee had been named as a defendant in error in a lawsuit involving medical care provided to inmates, the state entity or actor would be dismissed from the lawsuit before it settled, thereby removing NMCD from the settlement process. NMCD stated that "[Respondent] alone pays all settlement amounts, pays its own attorneys to settle or try the case, and pays the inmate's attorney fees and any judgments or verdicts entered in these cases." As such, NMCD explained that Respondent is the custodian of the settlement agreements involving medical care of inmates during the time period when Respondent and NMCD were under contract. NMCD's responses also provided each Petitioner with Respondent's contact information, instructed Petitioners to contact Respondent, and forwarded a copy of each Petitioner's request to Respondent. Each Petitioner then sent written IPRA requests to Respondent requesting the same information previously requested of NMCD.

**{4}**     In response, Respondent sent all three Petitioners a table listing settlement amounts from each settlement and the correctional facility involved. Respondent also initially agreed to produce the settlement agreements if given an additional two weeks to

redact the names of the plaintiffs from the documents. Petitioners agreed to the extension, however on that same day, Respondent sent each Petitioner a letter refusing to produce any of the settlement agreements, stating "it is [Respondent's] position that IPRA does not compel production of this information. Further, the confidentiality agreements executed by the parties prohibit[] disclosure of the requested information."

**Issuance of Writ of Mandamus**

**{5}**      On July 18, 2016, Petitioners filed their Petition in the district court. Contained within were supportive facts and argument regarding Petitioner's assertions that Respondent was a private entity acting on behalf of a public body, thereby subjecting it to IPRA, and that the settlements resulted from Respondent's provision of medical treatment to or attendant abuse of state prison inmates. Eight days later, the district court preliminarily issued an alternative writ of mandamus, ordering Respondent to "[c]omply with your mandatory, non-discretionary duty to produce the settlement agreements requested by Petitioners" and "[p]ay Petitioners' reasonable attorney[] fees and costs for litigating this action" or "[s]how cause as to why this [preliminary] writ should not be made permanent."[1] Respondent filed its answer to the Petition ten days after the court-mandated deadline to either produce the settlement agreements or show cause. Primarily, Respondent stated it lacked sufficient information to properly respond to a significant number of Petitioners' factual assertions. While Respondent admitted that it was under contract with NMCD to provide inmate medical services in New Mexico correctional facilities and that it was paid $37 million a year to do so, it nevertheless argued that the Petition should not be granted and that the settlement agreements are not subject to IPRA because they (1) are private contracts between Respondent and private persons which require confidentiality pursuant to clauses in the agreements; and (2) are not a component of the public function Respondent contracted to perform for the State. Notably, Respondent's answer made no mention of mandamus as an inappropriate vehicle to enforce disclosure of the settlement agreements under IPRA.

**{6}**      At a merits hearing on August 16, 2016, Petitioners argued IPRA's applicability based upon Respondent's provision of services that constitute a public function under *State ex rel. Toomey v. City of Truth or Consequences*, 2012-NMCA-104, ¶¶ 13-14, 287 P.3d 364 (enumerating factors by which the public nature of a private entity's provision of services is assessed in determining if the private entity is subject to IPRA). Petitioners entered portions of the Contract into evidence to show that Respondent provided medical services in an "intertwined fashion" with NMCD, "side by side," and in

---

[1]Counsel for inmate plaintiffs named in the settlements at issue in the writ filed a motion of interested persons to be heard on this matter and corresponding position statement. Counsel then appeared at the hearing on the writ and argued that the settlement agreements should not be produced because "[p]ublic disclosure in this case would create an opportunity for [the plaintiffs] to be harassed [and] exploited." After the peremptory writ was granted following the hearing, counsel collaborated with Petitioners and Respondent to establish an exemplar agreement for purposes of redacting the settlement agreements if Respondent's appeal was unsuccessful. Upon entry of the enduring district court order establishing the redacted exemplar settlement agreement, the interested persons did not further object to production of the settlement agreements. For that reason, we assume that the interested persons were satisfied with the protection provided by the agreed upon redactions and will not address their involvement in this case to any extent further in this opinion.

a manner that required "constant feedback" and repeated approval by NMCD. Petitioners argued that NMCD supplied medical equipment, maintained extensive control over Respondent, and approved Respondent's staffing decisions. Petitioners explain that Respondent performed a governmental function that NMCD would otherwise have performed itself, and argued that even if Respondent had settlement autonomy in the context of civil lawsuits, such alone did not recharacterize Respondent's central function from that of a public entity subject to IPRA.

{7}     Respondent agreed that it stood "in[] the shoes of the [S]tate [by] providing [medical] services to inmates, [and that] documents related to providing those services are subject to IPRA[,]" but argued that the settlement agreements are not subject to production under IPRA "simply because [Respondent] operates a medical facility within our [S]tate's prisons" and that to conclude otherwise would subject "all of [Respondent's] business records" to IPRA disclosure. Respondent also argued that additional information—beyond identification of the correctional facilities and settlement amounts already set forth in its previously produced spreadsheet—was outside the responsive scope of IPRA.

{8}     At the end of the hearing, the district court granted the Petition, and on September 6, 2016, issued its final order granting writ of mandamus (Writ). It found that Respondent "was performing a public function and acting on behalf of the [NMCD] in providing medical services to New Mexico inmates and is therefore subject to IPRA[.]" Specifically, the court found "six of the nine *Toomey* factors weigh in favor of applying IPRA to Respondent," including: (1) the 37 million-a-year of public funds paid to Respondent by NMCD; (2) for services provided on publically owned property; (3) the availability of which were an integral part of NMCD's medical decision making process; (4) regarding a governmental function; (5) over which NMCD had contractual control; (6) under a contract benefitting NMCD and New Mexico inmates. Applying these findings, the district court concluded that the "settlement agreements related to [Respondent's] performance of this public function are public records subject to disclosure under IPRA[,]" reasoning that "[Respondent] cannot contract away the public's right to IPRA disclosure through various contractual provisions in the settlement agreements themselves and such provisions are void as against public policy . . . . [Respondent] operating in settlement agreements th[r]ough an insurance company does not otherwise eviscerate the requirements of IPRA."

{9}     The Writ thus ordered Respondent to produce the settlement agreements, redacted in accordance with the exemplar settlement agreement containing redactions initially agreed upon by the parties. The district court further instructed Petitioners to submit their motion for fees, including supporting affidavits and invoices. At Respondent's request, the district court stayed the Writ "pending exhaustion of [Respondent's] avenues of appellate review [under] Rule 1-062(C) NMRA."

**Attorney Fees**

**{10}** On September 19, 2016, Petitioners filed their motion for attorney fees and costs (Motion), but neglected to seek Respondent's position before filing. The Motion included the lodestar calculation of attorney fees for the two attorneys for Petitioners, Daniel Yohalem and Katherine Murray, amounts of past attorney fees awarded to both, a supporting affidavit from an expert on the market value of attorney fees in New Mexico, and additional supportive documentation including resumes and timesheets. Yohalem and Murray sought fees at $400 and $225 an hour, respectively. Yohalem additionally stated that his requested hourly rate was based "in part on the contingent nature of [his] representation of Petitioners."

**{11}** Opposing the Motion, Respondent made three arguments. First, that Yohalem should not be awarded fees at a higher rate as a consequence of an underlying fee arrangement. Respondent stated that New Mexico case law discussing the reasonableness of attorney fees in IPRA cases expressly omits three factors from Rule 16-105 NMRA, including "whether the fee is fixed or contingent." Second, that Petitioners' attorney fee request is not reasonable given "the time and labor required" and "the novelty and difficulty of the questions involved and skill required" in litigating the case. Respondent reasoned that the hours Petitioners' counsel expended on the case were unreasonable given their vast experience in IPRA litigation. Third, that Petitioners failed to seek Respondent's position on the motion for attorney fees, thereby depriving Respondent of the opportunity to discuss and agree upon a "reasonable amount of attorney[] fees." Accordingly, Respondent requested that Petitioners not be awarded their fees for the preparation of the attorney fee briefing.

**{12}** At a February 13, 2017 hearing on the Motion, the district court found that the hourly rates sought by Petitioners' counsel were reasonable in light of the difficulty of the case, the risks involved, and the rates of lawyers with comparable experience. In its ensuing written findings of fact and conclusions of law granting the Motion, the court also found that Respondent "presented no evidence whatsoever to challenge the [requested] hourly rates." It concluded that Petitioners did not seek fees increased to reflect the contingent nature of their work and stated "this [c]ourt has not awarded any enhancement[,]" but that such would be permissible based upon "the contingent nature of their fee arrangement in this case . . . under prevailing New Mexico precedent." The district court lastly concluded that Petitioners should not be penalized for failing to confer with Respondent prior to filing their motion on fees because the motion for fees was a motion that by its nature could be deemed opposed "in the context of the instant case."

**{13}** Respondent separately and timely appealed both the district court's issuance of the Writ and its ensuing award of attorney fees. Both appeals are now consolidated and resolved by this opinion.

## DISCUSSION

**{14}** On appeal, Respondent contends that the district court's issuance of the Writ in this circumstance was an improper use of mandamus proceedings because the facts

before the district court were insufficient to establish that the settlement agreements were public records under IPRA and because the Petition presents an unsettled question of law. Respondent also argues the district court abused its discretion in its award of attorney fees to Petitioner's counsel.

**Standard of Review**

**{15}**  "We generally review the granting or denial of a writ of mandamus under an abuse of discretion standard." *Alarcon v. Albuquerque Pub. Sch. Bd. of Educ.*, 2018-NMCA-021, ¶ 26, 413 P.3d 507, *cert. denied*, ___NMCERT___ (No. S-1-SC-36811, Jan. 23, 2018). Given that mandamus is proper only in circumstances where there exists a legal duty to act, we must also interpret statutory provisions of IPRA to ascertain whether the settlement agreements at issue are public records. Thus, our review is de novo. *See id.*; *Cox v. N.M. Dep't of Pub. Safety*, 2010-NMCA-096, ¶ 4, 148 N.M. 934, 242 P.3d 501 ("The meaning of language used in a statute is a question of law that we review de novo." (internal quotation marks and citation omitted)). "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *City of Albuquerque v. Montoya*, 2012-NMSC-007, ¶ 12, 274 P.3d 108 (alteration, internal quotation marks, and citation omitted). In so doing, we "take care to avoid adopting a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction." *Alarcon*, 2018-NMCA-021, ¶ 5 (internal quotation marks and citation omitted). IPRA must be construed in light of its purpose and statutory provisions under IPRA "should be interpreted to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished." *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 14, 150 N.M. 64, 257 P.3d 884 (internal quotation marks and citation omitted). Lastly, an "[a]ward of attorney fees rests in the discretion of the trial court and this [C]ourt will not alter the fee award absent an abuse of discretion." *Lenz v. Chalamidas*, 1991-NMSC-099, ¶ 2, 113 N.M. 17, 821 P.2d 355.

**Third-Party Settlement Agreements Resulting From Medical Care Provided Under a Contract With the State Are Public Documents Subject to Disclosure Under IPRA**

**{16}**  IPRA declares it "to be the public policy of this state[] that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees[,]" NMSA 1978, Section 14-2-5 (1993); *Pacheco v. Hudson,* 2018-NMSC-022, ¶ 23, 415 P.3d 505, and that "such information is an essential function of a representative government and an integral part of the routine duties of public officers and employees[,]" Section 14-2-5. "Every person has a right to inspect public records of this state except" when a public record falls into an enumerated exception. NMSA 1978, Section 14-2-1(A) (2019). IPRA defines public records as:

all documents, papers, letters, books, maps, tapes, photographs, recordings and other materials, regardless of physical form or characteristics, that are used, created, received, maintained or held by or on behalf of any public body and relate to public business, whether or not the records are required by law to be created or maintained[.]

NMSA 1978, Section 14-2-6(G) (2013).

**{17}** "[U]nder IPRA, public records are 'broadly defined.' " *Edenburn v. N.M. Dep't of Health*, 2013-NMCA-045, ¶ 17, 299 P.3d 424. Here, we construe IPRA in light of its language and purpose to ascertain whether the Legislature intended for settlement agreements, entered into by third-party entities and arising from the third-party's performance of the public function, to be public documents available under IPRA. We must determine if such settlement agreements were "used, created, received, maintained or held by or on behalf of [the NMCD,] and relate to public business[.]" Section 14-2-6(G). We recognized some absence of clarity on this issue in *Toomey* in which we observed:

> The 'on behalf of' language, however, is not defined, and the statute does not indicate whether every purportedly public document created or held by a private entity comes within the ambit of IPRA or whether there are any limitations to production of requested records. *See Merriam-Webster's Collegiate Dictionary* 103 (10th ed. 1996) (defining "on behalf of" as "in the interest of" or "as a representative of"). The Legislature has offered no guidance on the issue.

*Toomey*, 2012-NMCA-104, ¶ 10.

**{18}** Nonetheless, in this inquiry we are guided by IPRA itself, as well as cases interpreting it. First, we rely on the language of Section 14-2-6(G) insofar as the settlement agreements were plainly created and maintained in relation to a public business, here, the medical care and personal safety of the inmates held by the NMCD. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (stating the "plain language of a statute is the primary indicator of legislative intent" (internal quotation marks and citation omitted)). Despite the fact, as *Toomey* states, that the applicable provision does not expressly list items suited to IPRA disclosure, we cannot envision, nor does Respondent cogently point us toward an alternative conclusion regarding records of this nature—involving civil compensation based upon flawed medical care or sexual abuse in New Mexico prisons. *See* 2012-NMCA-10, ¶ 10. To reiterate, Respondent was acting on behalf of the NMCD by providing medical services to inmates at New Mexico detention facilities. The settlement agreements were created as a result of Respondent's public function acting on behalf of NMCD as they involve alleged mistreatment of inmates while in the custody of the State of New Mexico. We view Section 14-2-6(G) to plainly guide our determination that the settlement agreements are public records subject to production under IPRA.

**{19}** Second, we are guided by IPRA's stated purpose that "all persons are entitled to the greatest possible information regarding the affairs of government." Section 14-2-5. And while we "utilize a flexible approach that favors access to records even when held by a private entity[,]" *Toomey*, 2012-NMCA-104, ¶ 26, the foundational objectives of IPRA are to "provide access to public information and thereby encourage accountability in public officials and employees." *Bd. of Comm'rs of Doña Ana Cty. v. Las Cruces Sun-News*, 2003-NMCA-102, ¶¶ 17, 29, 134 N.M. 283, 76 P.3d 36, *overruled on other grounds by Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-026, ¶ 16, 283 P.3d 853 (eliminating any reliance on the "rule of reason" exception to IPRA). "People have a right to know that the people they entrust with the affairs of government are honestly, faithfully and competently performing their function as public servants." *Id.* ¶ 29 (internal quotation marks and citation omitted). Allowing private entities who contract with a public entity "to circumvent a citizen's right of access to records by contracting" with a public entity to provide a public function "would thwart the very purpose of IPRA and mark a significant departure from New Mexico's presumption of openness at the heart of our access law." *Toomey*, 2012-NMCA-104, ¶ 26 (holding recordings of city meetings to be disclosed under IPRA).

**{20}** Third, this Court previously determined that settlement agreements resulting from civil inmate claims against a county detention center involving allegations of sexual abuse by county detention officers *were* public records subject to disclosure under IPRA. In *Board of Commissioners of Doña Ana County*, we held that the Doña Ana County's denial of Las Cruces Sun-News' IPRA request for documents related to settlements Doña Ana County reached on behalf of Doña Ana County Detention Center was unreasonable and in violation of IPRA. 2003-NMCA-102, ¶¶ 3, 41. Doña Ana County acknowledged that it was required to release the requested documents under IPRA, however, it argued that the documents fell under certain IPRA exceptions and that the documents should not be disclosed due to public policy reasons. *Id.* ¶¶ 3, 27. Even though *Board of Commissioners of Doña Ana County* involved IPRA requests for documents directly from a public entity instead of from a private entity under contract with a public agency, this Court nonetheless held that settlement agreements resulting from civil lawsuits by inmates alleging mistreatment while in custody were public records subject to IPRA. *Id.* ¶ 41.

**{21}** Given the foregoing, and having concluded above there is no distinction between Respondent and a public entity concerning the issues here, the settlement agreements entered into by Respondent are public records under Section 14-2-6. Information about the mistreatment and abuse of New Mexico inmates as raised in the civil claims is exactly the type of public information that IPRA contemplates must be disclosed to the public in order to hold its government accountable. Regardless of whether Respondent was a third-party private entity, the settlement agreements at issue arose from allegations resulting from Respondent's performance of a public function—providing medical care to inmates—and as such, the settlement agreements resulted from the medical care provided to New Mexico inmates while under contract with the State.

**Sufficient Evidence Existed in the Record to Support Issuance of the Writ**

**{22}** In light of our holding that the settlement agreements are subject to disclosure under IPRA, we next address Respondent's argument that there was insufficient evidence in the record in this instance for the district court to grant the Writ. Respondent alleges (1) the facts alleged in the Petition were not sufficient; (2) Respondent's denial of facts asserted in the Petition showed deficient facts; and (3) the district court improperly failed to conduct an in camera review of the settlement agreements to determine if they involved public business. We are unpersuaded. Respondent itself denoted by list those settlements between Respondent and inmates at New Mexico correctional facilities that are responsive to Petitioners' IPRA requests when it produced a chart listing the settlement amounts and the facilities where the plaintiff inmates were held. Respondent admitted it was under contract with NMCD to provide onsite medical services for inmates in various New Mexico correctional facilities and the settlement documents at issue "are the result of settlement of allegations concerning sexual assault[,]" and "the settlement agreement [r]eleasors are prior and in most cases, current correctional facility inmates." Additionally, Respondent conceded that "many aspects of [its] provision of services to [NMCD] are subject to [IPRA] because [it] does perform a public function when it provides medical services. Thus, despite Respondents arguments, we conclude there was sufficient evidence in the record for the district court to find that the settlement agreements were public records.

**{23}** Respondent also argues that the district court's failure to review the settlement agreements in camera before granting the Writ was an abuse of discretion. While courts may utilize in camera review of documents in determining a question of responsiveness to an IPRA request, it is not required in every circumstance. *See ACLU of N.M. v. Duran*, 2016-NMCA-063, ¶ 45, 392 P.3d 181 (stating that "[w]here appropriate, courts should conduct an in camera review of the documents at issue" when determining if documents are responsive or if privilege applies under IPRA). In this circumstance, in camera review was not required given the facts already in the record and given this Court's holding in *Board of Commissioners of Doña Ana County* that settlement agreements resulting from civil claims based on criminal sexual acts by county detention officers against inmates were subject to production under IPRA. Accordingly, the district court did not abuse its discretion by determining the settlement agreements in this case were subject to production under IPRA without an in camera review.

**Use of Mandamus Was Proper to Require Respondent to Produce Public Records Pursuant to IPRA Requests**

**{24}** Citing *Brantley Farms v. Carlsbad Irrigation District*, 1998-NMCA-023, 124 N.M. 698, 954 P.2d 763, Respondent belatedly argues on appeal that the district court's grant of mandamus relief was impermissible because no record "clear[ly] and undisputed[ly] established] that the facts and conditions provided in the statute exist"[2] as it is not a

---

[2]Respondent's argument regarding the propriety of mandamus proceedings in this case is presented for the first time on appeal. *See Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court."); *see also Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 (stating the primary purposes for the preservation rule as "(1) to specifically

matter of settled law that the settlement agreements are public records subject to IPRA and instead poses a fact intensive inquiry ill-suited for resolution by writ of mandamus. Respondent's argument is made despite the fact that trial counsel in district court was perfectly content to contest the case in a mandamus proceeding without once questioning the propriety of that remedy. Although we could discard Respondent's newfound argument on preservation grounds, given the importance of procedural as well as substantive clarity in the context of IPRA, we reach its merits nonetheless.

**{25}** Respondent is correct that "[m]andamus lies only to force a clear legal right against one having a clear legal duty to perform an act and where there is no other plain, speedy and adequate remedy in the ordinary course of law." *Brantley Farms*, 1998-NMCA-023, ¶ 16. In the event that common law is here not enough, within IPRA itself Section 14-2-12(B) states "[a] district court may issue a writ of mandamus or order an injunction or other appropriate remedy to enforce the provisions of [IPRA]." Only in its reply brief does Respondent concede that mandamus relief *is* available under IPRA, but contends that it is inappropriate in the instant case because this situation does not require "extraordinary remedy" contemplated by mandamus. Arguing that mandamus is but one remedy available to petitioners seeking to enforce IPRA requests, and citing NMSA 1978, Section 44-2-5 (1884) (providing that a writ of mandamus will not issue in a case where a different adequate remedy is available), Respondent seeks reversal of the Writ. Respondent also cites the district court's description of the settlement agreements issue as "novel and complex," despite that language referring only to the difficulty of the case in relation to the amount of attorney fees sought by Petitioners, as proof that mandamus was improperly granted on unsettled law. We are not persuaded.

**{26}** We conclude that under IPRA, as Respondents concede, Petitioners have a clear legal right of enforcement against Respondent, and Respondent has a clear legal duty to provide public records to Petitioners under Section 14-2-12. *See* § 14-2-5 (providing that allowing public to inspect public records pursuant to IPRA is a routine duty of public officers and employees). This is plain because Respondent acted on behalf of a public entity by providing medical care to inmates at various New Mexico correctional and detention facilities. Thus, the overarching legal duty of Respondent and the underpinning legal right of Petitioners here is established. Combined with the facts that the Legislature's express inclusion of mandamus proceedings as one tool by which IPRA may be enforced, and that the question of law centers around specific and similar known documents, we conclude there to be no error in Petitioners' and the district court's employment of mandamus proceedings in this case. Indeed, the Writ itself demonstrates that the district court considered both the nature of Respondent's public responsibilities along with the nature of the disputed documents and arrived at its

---

alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue."). Nonetheless, Rule 12-321 NMRA permits an appellate court to consider unpreserved issues if such pertain to a matter of general public interest. Given the importance of IPRA's role in providing the public with access to information about its government, and because the question of law presented has been fully briefed by both parties and is a matter of general public interest, we resolve the issue on the merits.

conclusion both cautiously and under the appropriate criteria associated with mandamus proceedings. Coupled with our conclusions that third-party settlement agreements resulting from the provision of medical care to New Mexico inmates provided under a contract with the State are subject to disclosure under IPRA, and that the record in this case was sufficient to qualify the agreements at issue as public documents, we affirm the Writ in its entirety.

**Attorney Fees Were Properly Awarded By the District Court**

**{27}** "A factual determination by the district court that an IPRA fee request is reasonable when weighed against the results obtained in the litigation will be disturbed only when the award is contrary to logic and reason." *ACLU of N.M.*, 2016-NMCA-063, ¶ 41 (internal quotation marks and citation omitted). The district court here concluded "that Petitioners' attorneys did not seek an enhancement of their hourly rates for the work performed in this case[,]" and also concluded that the award was "reasonable in light of the difficulty of the case, certainly the risk involved, and the rates of lawyers with comparable experience." Respondent argues that the district court abused its discretion in awarding Yohalem's fees at $400 an hour because the award rested "on contradictory conclusions that were not supported by substantial evidence[.]" Specifically, Respondent argued that the district court "concluded that [c]ounsel did not seek a contingency premium, and that no such premium was awarded . . . [y]et elsewhere in its oral ruling, the district court held that [c]ounsel's requested rate was justified by the contingent nature of his representation of Petitioners." Respondent reasoned that awarding an enhancement for attorney fees under IPRA was improper because the factors to be assessed in determining reasonableness suggest that the court may not consider contingency fees.

**{28}** The only evidence presented by Respondent to prove that the attorney fee award was bolstered with an enhancement is Petitioners' assertion in their Motion that counsel's "hourly rate is based in part on the contingent nature of [his] representation of Petitioners." But the district court stated that no enhancement was included in its award, and we have no evidentiary basis to conclude otherwise. Thus, the district court did not abuse its discretion by awarding the $400 an hour attorney fee because there was substantial evidence to support such an award and because the district court properly concluded that contingency fees were not a part of the attorney fee award. The district court's findings, including its thorough analysis and weighing of factors, explain its conclusion that Petitioners' requested attorney fees were proper. The court considered Yohalem's and Murray's years of experience and record of fee awards, as well as expert Mr. Davis's unrebutted declaration explaining market rates in the relevant jurisdiction in its determination. The district court found,

> [w]hile the rates for Mr. Yohalem and Ms. Murray are toward the high end of the market range for comparable attorneys doing comparable work in this geographic market, these rates are reasonable, appropriate and within the range for the work performed in this case; further, these rates were not rebutted with any contrary evidence by Respondent. The rates are

especially justified in light of the attorneys' skill and experience and the successful outcome of this novel and complex case. The hourly rates and hours worked approved herein do not include any enhancement.

The district court's attorney fee award was supported by substantial evidence and Respondent has failed to show how the fee award is contrary to logic and reason.

**{29}** Respondent also argues that the district court abused its discretion by not finding the fee award was improper because Petitioners failed to seek Respondent's concurrence before filing the Motion. Rule 1-007.1 NMRA requires a movant to consult with opposing counsel to determine if a motion is opposed. The district court excused Petitioners' failure in this regard because, as was demonstrated at the hearing on attorney fees, the Motion was observably contested by Respondent.[3] We do not consider the district court's excusal of Petitioners' failure to seek Respondent's position on the Motion to have been an abuse of discretion.

**CONCLUSION**

**{30}** For the foregoing reasons, we affirm the district court's orders granting writ of mandamus and awarding attorney fees to Petitioners.

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**RICHARD C. BOSSON, Judge Pro Tempore**

---

[3]We remind Respondent that it was provided a similar courtesy when the district court excused it from filing its answer to the Petition ten days late earlier in the district court proceedings and the district court considered the merits of Respondent's answer even though it was untimely filed.